**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 19 2012, 9:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MATTHEW J. MCGOVERN**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL PRIDDY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 31A01-1110-CR-455 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HARRISON SUPERIOR COURT
The Honorable Roger D. Davis, Judge
Cause No. 31D01-1003-FB-189

**June 19, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Michael Priddy appeals his convictions and sentence for eight counts of Class B felony child molesting. We affirm.

**Issues**

Priddy raises two issues on appeal, which we restate as:

I.      whether the trial court was required to sever the charges; and

II.     whether his seventy-five-year sentence is inappropriate.

**Facts**

L.J. and K.J.'s family lived in Palmyra from June 2008 until the summer of 2009. During this time period, L.J. was thirteen to fourteen years old, and K.J. was twelve to thirteen years old. Several other adults lived with the family in Palmyra, including Priddy. At this time Priddy was nineteen to twenty years old, unemployed, and receiving Social Security disability payments for his learning disabilities.

While in Palmyra, L.J.'s father, Robert James, Sr., forced her to have sexual intercourse and oral sex with Priddy on multiple occasions. Priddy often paid James for sex with L.J., and James often watched them have sex. L.J. believed that she had sex with Priddy three to four times in her bedroom and over twenty times in the shed behind her home, where Priddy often lived.

On one occasion James forced K.J. to have sex with Priddy in L.J.'s room. Priddy was only able to insert his penis a short distance into her vagina because, as he stated, K.J. was too "tight." Tr. pp. 388-393.

On September 29, 2009, L.J. informed her school principal of the abuse. L.J., K.J., and the other children were removed from their parents' home. The two girls were later interviewed by authorities. L.J. and K.J. are currently undergoing treatment for the sexual, physical, and mental abuse they suffered.

The State charged Priddy with thirteen counts of Class B felony child molesting. Counts I through IV related to events involving K.J., and counts V through XIII related to events involving L.J. Priddy moved to sever counts one through four involving K.J. from the remaining counts involving L.J. The motion was discussed at a pretrial conference at which time the State made clear its plans to dismiss counts two through four, leaving one charge relating to K.J. The severance motion was again discussed at Priddy's jury trial. After the State's dismissal of counts two through four, the charges were renumbered, and the trial court denied Priddy's severance motion. The jury found Priddy not guilty of two counts and guilty of the remaining eight counts, including the one count involving K.J.

Multiple sentencing hearings were held at which time Priddy testified about his mental health issues and periods of hospitalization. Priddy testified he had attempted suicide on numerous occasions. He testified that his mental health issues were less severe while on medication, but while in jail awaiting trial, where he received his medications regularly, he still was often reprimanded for unruly behavior.

3

The trial court found that Priddy's young age and mental health were mitigating circumstances but found that there was no connection between Priddy's mental health and his actions against L.J. and K.J. The trial court found his criminal history and the nature of the offense to be aggravating circumstances. The trial court found the most significant aggravating circumstances to be the multiple victims involved as well as the frequency of the molestations.

The trial court sentenced Priddy to fifteen years imprisonment for the one count relating to K.J. and fifteen years each for the seven remaining counts relating to L.J. Four of the counts relating to L.J. were to run consecutive to each other, and the three remaining counts relating to L.J. were to run concurrently to the other sentences. In total Priddy received an executed sentence of seventy-five years with no time suspended. Priddy now appeals.

**Analysis**

*I. Severance of Charges*

Priddy argues that the trial court erred in not severing the charge relating to K.J. from the charges relating to L.J. The State argues that Priddy waived any claims regarding the denial of his severance motion by not appropriately renewing the motion at trial. Indiana Code Section 35-34-1-12 provides "The right to severance of offenses or separate trial is waived by failure to make the motion at the appropriate time." Priddy contends that the statute requires a renewal of the motion only if the motion for severance had been denied prior to trial. We agree.

4

Priddy's motion for severance is distinguishable from the motion in question in Hobson. Hobson v. State, 495 N.E.2d 741, 744 (Ind. Ct. App. 1986). In Hobson the pretrial motion for severance was made the morning of trial, was denied, and then Hobson later failed to renew the motion during trial. Priddy's pretrial motion for severance was made in advance of the trial and taken under advisement. Priddy's motion was denied immediately after the jury had been selected on the day of the trial. This discussion at trial is more than sufficient to preserve the issue, and any other motion following the conclusion of evidence would have been futile and unnecessary. Priddy did not waive any claims regarding the severance motion.

Indiana law provides:

> Two or more offenses can be joined in the same indictment or information, with each offense stated in a different count, when the offenses:
>
> 1) are of the same or similar character, even if not part of a single scheme or plan; or
>
> 2) are based on the same conduct or a series of acts connected together or constituting parts of a single scheme or plan.

Indiana Code Section 35-34-1-9(a). Priddy concedes that his offenses were of the same or similar character.

However, Priddy argues that his offenses were joined solely because of their same or similar character, and therefore, he is entitled to severance as a matter of right. Indiana Code Section 35-34-1-11(a) provides that "whenever two or more offenses have been

5

joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right of severance of the offenses." Severance is required as a matter of right if the sole reason for joinder is the same or similar character of the offenses. The trial court has no discretion to deny a defendant's motion for severance in such a situation. Jackson v. State, 938 N.E.2d 29, 35-36 (Ind. Ct. App. 2010), trans. denied. The State contends that, beyond the same or similar character of his acts, Priddy developed a continuing scheme that included a series of connected acts.

We find sufficient evidence to support the trial court's denial of Priddy's motion for severance.[1] Priddy's offenses had more in common than the same or similar character. The molestation of the two sisters was a distinctive, unusual scheme in that it occurred in the same house, in the same bedroom, over the same period of time, and at their father's instigation. James abused L.J. when she refused to have sex with Priddy, and Priddy took advantage of this fear with both L.J. and K.J. Priddy's actions evidenced a continued scheme with repeated acts occurring in the same location over the same period of time, which is sufficient to allow joinder. See Philson v. State, 899 N.E.2d 14, 17 (Ind. Ct. App. 2008) (finding that charges related to sex acts committed upon siblings in the same house over the same period of time did not have to be severed), trans. denied;

---

[1] The State relies on an inference that connects the payment provided to L.J. with the molestation of K.J. Priddy gave money to L.J. who would later give the money to James, but we find insufficient evidence in the record to support the State's claim that the same payment activity occurred with Priddy and K.J. The remaining facts in the record, however, are more than sufficient to support the trial court's decision.

6

Blanchard v. State, 802 N.E.2d 14, 24 (Ind. Ct. App. 2004) (finding that charges involving twins living in the same household did not have to be severed because of a series of connected acts).

Priddy alternatively argues that, even if he was not entitled to severance as a matter of right, the trial court abused its discretion by refusing to grant his motion for severance. Under the abuse of discretion standard, the trial court must determine whether the severance is appropriate to promote a fair determination of defendant's guilt or innocence of each offense. Booker v. State, 790 N.E.2d 491, 494 (Ind. Ct. App. 2003), trans. denied. In making such a determination, Indiana Code Section 35-34-1-11(a) mandates the trial court to consider: (1) the number of offenses charged; (2) the complexity of the evidence to be offered; and (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

The number of charges in this case is not confusingly large. The State dismissed three of the charges relating to K.J., which left only ten counts remaining. Furthermore, the evidence presented at trial was not overly complex. The evidence in the case consisted largely of the girls' testimony, which described Priddy's molestation. The girls' testimony was easy to distinguish and separately described each girl's independent experiences. The jury also acquitted Priddy on two of the charges relating to L.J. This shows that the jury was able to adequately distinguish between the evidence regarding each count. See Philson, 899 N.E.2d at 18.

7

Although Priddy did not waive his claims on the issue, he was not entitled to severance as a matter of right. The trial court also did not abuse its discretion in its denial of Priddy's motion for severance.

## II. *Appropriateness*

Priddy argues that his sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. Although Rule 7(B) does not require us to be extremely deferential to the trial court, we still must give due consideration to that sentence. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also recognize the unique perspective that the trial court provides in delivering its sentence. Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B),

8

we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

The nature of these offenses is particularly shocking and heinous. Priddy molested two girls who were members of the family with whom he was living at the time. In the case of L.J., Priddy molested her on multiple occasions over the course of a year. L.J. was forced to have sex with and perform oral sex on Priddy in return for money given to her father. Priddy had sex with L.J. in her bedroom and in a tool shed, often times with her father watching. Priddy also included K.J. in his criminal scheme and had sexual intercourse with her. The multiple victims and the frequency of the molestations add to the severity of these offenses.

The record also demonstrates that Priddy's character is particularly poor. Priddy has a criminal history including assault and burglary. The assault was the result of an altercation between Priddy and his sister in which he struck her multiple times with a mop handle. While in jail awaiting trial for these offenses, Priddy was reprimanded for fighting, receiving a tattoo, flooding his cell with water, and receiving stolen property. He was also on probation in Kentucky at the time of these offenses for burglary.

The trial court was correct in recognizing his young age as a mitigating circumstance, but Priddy was nineteen and twenty when the molesting occurred, which is not necessarily an age young enough to be considered a significant mitigating circumstance. See Coleman v. Sate, 952 N.E.2d 377, 385 (Ind. Ct. App. 2011) (finding

that defendant's relative youth (twenty-one years old) was not a strong mitigating circumstance when a ready willingness to commit the crime was present). Priddy was functioning as an adult and was purposeful in his actions.

Priddy reports an extensive history of mental illness, but his accounts are supported only by his self-reporting. He claims to have been in foster care from the ages of two to fifteen. During this time period, Priddy claims to have been abused physically and sexually by a foster parent. At the age of fifteen, Priddy began a three-year period of hospitalization at River Valley Mental Hospital. Priddy claims to still experience psychotic episodes both visually and aurally. Priddy claims to have attempted suicide thirty times, and he stated in his presentence investigation that he had thoughts of suicide following the jury's determination of guilt in the instant offenses. Though these are all serious allegations of mental illness, they are substantiated only by Priddy's self-reporting and consequently, hold less importance in evaluating Priddy's character. Furthermore, the trial court found no connection between Priddy's mental illness and the instant offenses. Mental illness is not a mitigating circumstance if there is no connection between the illness and the crime. Covington v. State, 842 N.E.2d 345, 349 (Ind. 2006).

In light of the frequency of the offenses and the number of victims as well as Priddy's poor character, we find that his seventy-five year sentence for eight counts of Class B felony child molesting is appropriate.

**Conclusion**

The trial court did not err when it denied Priddy's motion for severance, and the sentence is appropriate in light of the nature of the offenses and the character of the offender. We affirm.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.