**Jimmy A. CRAIG, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 17S00–9911–CR–638.

Supreme Court of Indiana.

June 30, 2000.

Anthony L. Kraus, Auburn, Indiana, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Jimmy A. Craig was convicted of child molesting as a Class A felony and of being a habitual offender. He was sentenced to fifty years for child molesting, enhanced by thirty years for the habitual, for a total sentence of eighty years imprisonment. In this direct appeal he contends that (1) the trial court erred in denying his motion to sever; (2) there is insufficient evidence to support his conviction for child molesting; (3) the trial court erred in admitting exhibits in support of the habitual offender enhancement thereby rendering the evidence insufficient to support it. We affirm the trial court.

### Factual and Procedural Background

On September 9, 1998, nine-year-old C.R. spent the night at Craig's house. C.R. and Craig's daughter, age eight, were in the same Brownie troop, and Craig and his wife were leaders of the troop. As the girls watched television, Craig told C.R. that he later wanted to try the "taste test" with her. He explained that he had "this rubber thing that he puts on bottles." C.R. later went into Craig's bedroom where he was lying on the bed wearing only a pair of shorts. While C.R.'s eyes were uncovered, Craig had her taste a variety of foods from plastic bottles that he had brought in the room. He then covered her eyes with duct tape, told her to put her hands under her bottom, and poured a cherry substance in her mouth. Craig then put "something with the little bottle top on it" in her mouth. C.R. described this object as "like a thumb but it was much bigger." It did not have a

thumbnail. The object was soft and warm, and Craig told her to "[s]uck on it." Eventually a substance that tasted like "urine" came out of it. C.R. spit out the substance and tore the tape off of her eyes. She saw Craig standing with his hands raised in the air. He said, "What did I do, what did I do?" Craig never showed C.R. the rubber bottle top that he had purportedly placed in her mouth. Minutes after the incident, Craig asked C.R. if she was going to tell on him.

The next morning, after C.R. told her teacher about the incident, she was interviewed by a case manager from the DeKalb County Division of Family and Children. Police then obtained a court order for a blood draw from Craig. The blood draw ultimately proved useless because no physical evidence was found on which to base a comparison, but after the blood draw Craig agreed to go to the police station for questioning. A detective told Craig that he needed to talk to him about an incident involving C.R., and Craig responded, "There was no inappropriate touching." When the detective stated that he had contrary information, Craig said he was not capable of getting an erection because of medication he was taking.

Craig was charged with the molestation of C.R. and the molestation of C.W., a six year old from the Brownie troop, in an incident alleged to have occurred five or six days earlier. He was also charged with being a habitual offender. On the day before trial, Craig filed a motion to sever the two child molesting counts, which was denied. At trial C.W. testified that Craig covered her eyes with tape and put marshmallows and "chocolate stuff" in her mouth. She did not recall anything else being put in her mouth, and the State dismissed the first count of molestation after her testimony. Craig was convicted of the molestation of C.R., found to be a habitual offender, and sentenced to eighty years imprisonment.

## I. Motion to Sever

■ Craig first contends that the trial court erred by denying his pretrial motion to sever. The statute provides that two or more offenses, stated in separate counts, may be joined in the same indictment or information when the offenses "(1) are of the same or similar character, even if not part of a single scheme or plan; or (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." Ind. Code § 35–34–1–9(a) (1998). The State charged Craig with two Class A felony counts of child molesting. Count I alleged that Craig placed his penis in the mouth of six-year-old C.W. on September 23 or 24, 1998. Count II alleged that Craig placed his penis in the mouth of nine-year-old C.R. on September 29, 1998. According to the probable cause affidavits filed with the charges, C.W. told police that Craig asked her if she wanted to play the "taste test" game. She agreed and Craig put tape over her eyes so that she could not see what he was putting in her mouth. At some point Craig

> put an object in her mouth that was soft and at first she started to bite it and [Craig] told her not to. C.W. stated that when he put it back in her mouth it felt like a thumb. C.W. stated that [Craig] told her to close her mouth and to suck on it which she did and the nasty stuff squirted out and it was warm.

The probable cause affidavit filed in support of Count II alleged that Craig asked C.R. if she wanted to play the "taste test" game and placed tape over her eyes so she could not see. Craig told C.R.

> that he had put a rubber end on something and she needed to 'suck on it till the juice came out.' C.R. stated that she had to open her mouth real wide. C.R. stated that it was like a thumb but a lot bigger.... C.R. stated that [Craig] was breathing like he was running (panting) and that her mouth was filled with a warm substance that C.R.

stated tasted like urine and she did spit it out.

■ Craig argues that he was entitled to a severance as a matter of right, and that even if he had no right to sever, the trial court abused its discretion in refusing a severance. Indiana Code § 35–34–1–11(a) provides defendants with the right to severance where "two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character...." As the statute explicitly states, severance is required as a matter of right under this provision only if the sole ground for joining is that the offenses are of the same or similar character. *See Ben–Yisrayl v. State*, 690 N.E.2d 1141, 1145 (Ind.1997). Offenses may be sufficiently "connected together" to justify joinder under subsection 9(a)(2) "if the State can establish that a common *modus operandi* linked the crimes and that the same motive induced that criminal behavior." *Id.* at 1145 (citing *Davidson v. State*, 558 N.E.2d 1077, 1083 (Ind.1990)).[1]

The molestations of C.W. and C.R. have the same modus operandi. Each victim was a member of the Brownie troop led by Craig and his wife and was spending the night at Craig's house. The incidents occurred within the same week. Craig asked each girl to take the "taste test" and covered the eyes of each with tape. He then put an object in their mouths and instructed them to suck on it. These similarities are sufficient to establish that the molestation of each victim was the handiwork of the same person. The motive of both offenses was the same—to satisfy Craig's sexual desires.

■ If severance is not a matter of right, Indiana Code § 35–34–1–11(a) provides that:

the court, upon motion of the defendant or the prosecutor, shall grant a sever-

ance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:

(1) the number of offenses charged;

(2) the complexity of the evidence to be offered; and

(3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

A trial court's refusal to sever charges under these circumstances is reviewed for an abuse of discretion. *Kahlenbeck v. State*, 719 N.E.2d 1213, 1216 (Ind.1999).

This case involved only two charges and a total of nine witnesses. The evidence was not complex but rather consisted primarily of the testimony of the two alleged victims and those who had spoken to them after the offenses. A jury would have no difficulty distinguishing the evidence and applying the law intelligently to each count. In *Davidson*, we observed there was "little danger of a jury being confused or overwhelmed with facts, considering only two charges were joined for trial. The evidence is largely circumstantial, but at its conclusion a clear picture emerges of two separate instances of the commission of infanticide for financial gain." 558 N.E.2d at 1083. The same is true here. The trial court did not abuse its discretion in denying the motion for severance.

## II. Sufficiency of the Evidence for Child Molesting

■ Craig contends that there is insufficient evidence to support his conviction for the molestation of C.R. Our standard for reviewing a claim of sufficiency of the evidence is well settled. We do not reweigh the evidence or judge the credibility of witnesses. *Spurlock v. State*, 675 N.E.2d 312, 314 (Ind.1996). We look to the evidence and the reasonable inferences

---

1. Modus operandi "refers to a pattern of criminal behavior so distinctive that separate crimes are recognizable as the handiwork of the same wrongdoer." *Penley v. State*, 506

N.E.2d 806, 810 (Ind.1987) (quoting *People v. Barbour*, 106 Ill.App.3d 993, 62 Ill.Dec. 641, 436 N.E.2d 667, 672 (1982)).

therefrom that support the verdict and will affirm a conviction if evidence of probative value exists from which a jury could find the defendant guilty beyond a reasonable doubt. *Id.*

■ Craig suggests that the State failed to present any direct evidence that he placed his penis in C.R.'s mouth. The absence of direct evidence entitles a defendant to a jury instruction to the effect that: "[w]here proof of guilt is by circumstantial evidence only, it must be so conclusive in character and point so surely and unerringly to the guilt of the accused as to exclude every reasonable theory of innocence." 2 *Indiana Pattern Jury Instructions (Criminal)* 12.01 (2d ed.1991). But we review the sufficiency of evidence to support a jury's verdict based solely on circumstantial evidence under a different standard. This Court need not find that the evidence overcomes every reasonable hypothesis of innocence but only that an inference may be drawn from the circumstantial evidence that supports the jury's verdict. *Owens v. State,* 514 N.E.2d 1257, 1258 (Ind.1987); *accord Vehorn v. State,* 717 N.E.2d 869, 876 (Ind.1999) ("On appeal, the circumstantial evidence need not overcome every reasonable hypothesis of innocence. It is enough if an inference reasonably tending to support the verdict can be drawn from the circumstantial evidence.") (citation omitted).

Craig is correct that no witness saw him put his penis in C.R.'s mouth. Craig and C.R. were the only ones in the room and her eyes were covered with tape. The jury could nevertheless reasonably draw an inference from C.R.'s testimony that an act of molestation occurred. Craig's statements to police also support an inference of his guilt. This is sufficient evidence to support his conviction for child molesting.

### III. Habitual Offender

■ As a final point Craig attacks the admission of documentary evidence during the habitual offender phase. The habitual offender charge alleged that, prior to the molestation of C.R., Craig had accumulated two prior unrelated felony convictions:

a 1981 burglary conviction from Kosciusko County and a 1985 burglary conviction from Wisconsin. The State sought to prove the predicate offenses in part through certified public documents.

State's exhibit one is a packet of certified documents from the Indiana Department of Correction. The cover page contains a certification that the attached seven documents are true and correct copies of records for Craig. However, four of the seven documents on the list of attached documents are whited-out, and only the remaining three listed documents are attached. The whited-out documents apparently pertain to a conviction from Whitley County, which the State redacted at the trial court's instruction. Although Craig agreed that these other documents should not be submitted to the jury, he contended at trial, and now on appeal, that removing these pages from a certified document rendered the documents uncertified and therefore inadmissible. He cites no authority in support of this contention.

The admission of documentary evidence at trial requires the proponent to show that the evidence has been authenticated, or simply put, that the evidence "is what its proponent claims." Ind. Evidence Rule 901(a). A piece of evidence may be authenticated by any method provided by rule of this Court, statute, or the state constitution. Evid. R. 901(a)(10). Where the document at issue is a domestic public record, certified in accordance with Trial Rule 44(A)(1), the document is self-authenticating and no extrinsic evidence is necessary for its admission. Ind. Evidence Rule 902(1).

This Court has previously rejected challenges to the admissibility of a multi-page exhibit that contained a certification attached to the top of the copies stating that the "foregoing" was correctly taken and copied from the original record. *See, e.g., Chanley v. State,* 583 N.E.2d 126, 131 (Ind. 1991); *Miller v. State,* 563 N.E.2d 578, 584 (Ind.1990). In *Miller,* we held "the placement of the certificate on the top of the papers rather than on the back in no way

causes any confusion as to the authenticity of the papers." 563 N.E.2d at 584. We reach the same conclusion here, where the certification clearly refers to the three attached documents but omits other documents unrelated to the case and prejudicial to the defendant. There is no question about the authenticity of the three remaining documents that bear the defendant's name and either the same cause number or Department of Corrections prisoner number that appears on the certification page.

The same is true of State's exhibit three, the certified records from Wisconsin. Although it is not clear from the record, it appears that rather than whiting out information, the prosecutor removed documents that contained information about other offenses and Craig's juvenile record. The certification of that exhibit states that it contains copies of Craig's fingerprint cards, photographs, and final disposition reports. It includes his prison identification number and date of birth. Unlike exhibit one, it does not list the specific documents attached. Nevertheless, each of the attached documents bears Craig's name, date of birth, and prison identification number. Whatever documents may have been removed do not affect the authenticity of those that remained.

In sum, the trial court properly admitted exhibits one and three. These exhibits, in combination with the other evidence presented during the habitual offender phase of the trial, constitute sufficient evidence of probative value from which a reasonable jury could have found that Craig had committed two prior unrelated felonies.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.