Sammie L. BOOKER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A05–0301–CR–00018.

Court of Appeals of Indiana.

June 18, 2003.

Transfer Denied Aug. 1, 2003.

David W. Stone, IV, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Sammie L. Booker appeals his three convictions for Child Molestation,[1] all class B felonies. Specifically, Booker alleges that the trial court erred as a matter of law by denying Booker's request for a severance of the charges against him because the charges had been joined for trial solely on the basis that they were of the same or similar character.

---

1. Ind.Code § 35–42–4–3.

Booker also maintains that the trial court abused its discretion in denying the appointment of an expert witness to aid his defense because his defense counsel was unable to effectively cross-examine the victims' caseworker with respect to improper questioning of the children by a family caseworker. Finally, Booker asserts that the forty-year sentence is inappropriate inasmuch as Booker had no previous criminal history. Concluding that the trial court did not err in denying Booker's motion to sever the charges, that the trial court did not abuse its discretion in denying Booker's request for the appointment of an expert witness, and that sentencing was proper, we affirm.

### FACTS

The facts most favorable to the verdict reveal that Felicia Chapman hired Booker to care for her two daughters—D., age seven and D.H., age six—in November 2001. On December 22, 2001, D. complained of a burning sensation when she urinated. The following day, D. was in severe pain, so Chapman's ex-husband took D. to the hospital. In the emergency room, a yellow vaginal discharge was noticed, and part of the discharge was taken as a sample to be tested. The laboratory reported that gonorrhea was present in the discharge. In response to some questions, D. told a treating nurse that "Sammie" had come into her bed at night. When the nurse asked D. if "Sammie" had touched her where he should not have, D. replied in the negative. However, a family case manager from the Madison County Division of Family and Children—called by hospital personnel—interviewed D.D. told the case manager that Sammie—and no one else—had touched her private areas. Hospital personnel ran tests on D.H., which showed that she was infected with gonorrhea as well. Chapman, her husband, and Booker were tested for gonor-

rhea, but only Booker tested positive for the disease.

On December 26, 2001, Anderson Police Department Detective Heather McClain interviewed Booker. During the interview, which was videotaped, Booker admitted to Detective McClain that his finger may have "accidentally" entered D.'s or D.H.'s vagina while the girls wrestled with him. State's Ex. 9. Booker, however, denied intentionally touching them inappropriately.

On December 27, 2001, the State charged Booker with child molesting. The charges alleged that Booker had performed criminal deviate conduct on D. on two occasions and on D.H. on one occasion by digitally penetrating their vaginas. Thereafter, Booker moved that the counts against him be severed for separate trials. Booker argued that he had an absolute right to severance of the counts because the offenses were joined solely because they were of the same or similar character. The trial court denied Booker's request.

On June 14, 2002, Booker's court-appointed public defender filed a petition with the trial court requesting funds—because of Booker's indigency—for a child psychologist to assist him in preparing a defense. Specifically, Booker asked "that a child psychologist trained and experienced in interviewing assess the credibility of the alleged victims and the reliability of their statements." Appellant's App. p. 14. Again, the trial court denied Booker's request.

At a jury trial commencing June 25, 2002, D. and D.H. testified that Booker had been their babysitter. Tr. p. 130, 145. The girls testified that Booker had placed his finger in their vaginas while they were in bed. Tr. p. 134, 135, 146, 147.

Booker was found guilty of all counts. Thereafter, the trial court sentenced Book-

er to twenty years for each count, with counts I and II to run consecutively and count III to run concurrent to counts I and II. Thus, Booker's total sentence was forty years. Booker now appeals.

## DISCUSSION AND DECISION

### I. Severance

Booker first argues that the trial court erred as a matter of law because the charges against him should have been severed because the offenses were joined solely for the reason that they were of the same or similar character. Specifically, Booker notes that "nothing distinctive about the fondlings" occurred in this case other than the fact that the victims were sisters. Appellant's Br. p. 8.

■ We first note that our severance statute, Indiana Code section 35–34–1–11(a), reads as follows:

(a) Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses. In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:

(1) the number of offenses charged;

(2) the complexity of the evidence to be offered; and

(3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

Thus, the first part of this statute provides that "where charges are joined solely on the ground that they are of the same or similar character, the accused has an abso-

lute right to a severance of the offenses." *Valentin v. State*, 567 N.E.2d 792, 794 (Ind.1991). The second part of this statute provides that when charges are *not* joined solely on the ground that they are of the same or similar character, the trial court *may* still sever the charges subject to a review for an abuse of discretion. *Id.* at 795. Here, Booker specifically "based his motion on being entitled to severance as a matter of right, not the discretionary section of the statute." Appellant's Br. p. 6. Thus, our review is limited to whether Booker's "absolute right to a severance of the offenses" was violated. *Id.* at 794.

■ To show that the charges were not joined only because they were the same or similar in character, the State may show that the charges contain a common modus operandi, thus establishing that the charges were joined because they were the work of the same person. *Craig v. State*, 730 N.E.2d 1262, 1265 (Ind.2000). Because the trial court has no discretion when severing charges that were joined solely on the ground that they were of the same or similar character, we review the trial court's decision employing a de novo standard. *Pardo v. State*, 585 N.E.2d 692, 693 (Ind.Ct.App.1992).

In *Craig v. State*, we affirmed the defendant's convictions for child molestation because the same modus operandi was used to molest the two victims. 730 N.E.2d at 1265. Specifically, both victims were members of the same Brownie troop led by Craig's wife. Both victims were spending the night at Craig's home. Craig covered both victims' eyes and asked them to take the "taste test" wherein he placed items in their mouths. Such similarities, we held, were sufficient to show that the charges were joined because the crimes were shown to be the "handiwork of the same person," and not solely because they were of the same or similar character. *Id.*

Here, the State showed that both D. and D.H. were placed in Booker's care. The evidence showed that the molestation had occurred in the girls' bedroom while they were in bed. Moreover, both girls testified that Booker had used his hand to touch them. Finally, the only persons to test positive for gonorrhea were Booker and the two victims. As in *Craig*, the State established that the charges were correctly joined because the episodes of molestation were the "handiwork of the same person" and not solely because they were of the same or similar character. *Id.* As a result, Booker was not entitled to severance as a matter of right, and the trial court did not err in denying his motion for severance.

## II. Expert Witness

Booker next argues that the trial court abused its discretion when it failed to agree to provide funds for an expert witness. Specifically, Booker contends that the investigators' questioning of the girls was such that a false memory of molestation may have been created. Thus, Booker argues, he needed the services of a child psychologist to properly prepare for the cross-examination of the caseworker who interviewed the two child-victims on the subject of the protocols used to interview D. and D.H.

In addressing Booker's contention that funds should have been provided for the hiring of an expert witness, we note that the appointment of an expert witness for an indigent defendant is left to the sound discretion of the trial court. *Beauchamp v. State*, 788 N.E.2d 881, 888 (Ind. Ct.App. 2003). After showing that he is indigent, a defendant must show a "need" for the expert in open court before public funds will be allotted to him. *Id.* The defendant must show that an expert's services are necessary to assure an adequate defense, and he must specify precisely how the requested expert services would benefit him. *Id.*

Perhaps the most infamous case dealing with the memory of child-victims of sexual molestation was *State v. Michaels*, 264 N.J.Super. 579, 625 A.2d 489 (1993). In this case, Kelly Michaels—a daycare worker—was accused of molesting numerous children in her charge. The tales told by the children allegedly molested ventured into the realm of the fantastic, yet their stories were believed by investigating authorities. Of particular concern to the court that reversed Michaels's convictions were the procedures investigators used to question the children. The court noted that the initial interviews with the alleged victims were not videotaped. Additionally, certain questions asked by investigators "planted sexual information in the children's minds and supplied the children with knowledge and vocabulary which might be considered inappropriate for children of their age group." *Id.* at 511. The court also noted that several children never even mentioned abuse until shown anatomically correct dolls. *Id.* The court found extremely disturbing the fact that investigators told children that Michaels had been "bad" and that by cooperating they would be helping authorities keep the children's families safe. *Id.*

The *Michaels* court reviewed extensive scientific material relating to sexual molestation reporting. One study determined "that the most accurate information is obtained at the initial interview" and that this interview should be videotaped. *Id.* at 511 (quoting Cail S. Goodman & Vicki S. Helgeson, *Child Sexual Assault: Children's Memory and the Law*, 40 U. Miami L.Rev. 181, 195, 198–99 (1985)). This is because coaching and memory loss have not occurred during the first interview and, thus, the child has not received any

external influences with respect to his statement. *Id.* at 512. Initial interviews were not taped in Michaels's case.

Another study noted that "if an interviewer gives signals that the interviewer is searching for an answer, children are very responsive to such signals." *Id.* at 514 (citing Mary Ann King & John C. Yille, *Suggestibility and the Child Witness, in Children's Eyewitness Memory* 29 (Stephen J. Ceci et al. eds., 1987)). The court observed that "when interviewers include suggestive and leading questions, children may eventually incorporate the suggested responses into memory." *Id.* at 515. This process, according to the *Michaels* court, means that the child witness will *actually believe* that which he is testifying to even if the memory is simply an external suggestion. *Id.* In Michaels's case, the investigators did not simply ask suggestive questions but actually told the interviewed children that Michaels had done "bad" things to children and that the children's assistance was needed to "keep Kelly in jail." *Id.* at 511.

■ No doubt that with cases such as *Michaels* in the background, Booker's counsel requested funds for an expert witness to assist in the investigation of D.'s and D.H.'s accounts. Apparently, Detective McClain spoke with D. and D.H. before she videotaped her interview with them. Additionally, during the videotaped interview, one of the alleged victims tells Detective McClain, "You are asking me the same questions you asked me before." Tr. p. 80. Such a statement may have prompted concern on the part of Booker's counsel that the child had been coached.

Notwithstanding the problems inherent in questioning child witnesses, we note that in this case the question of whether molestation occurred and the identity of the accused molester were not at issue. Booker acknowledged that he placed his finger in the girls' vaginas, though Booker contended it was during inadvertent horseplay. State's Ex. 9. Furthermore, only Booker and the two victims tested positive for gonorrhea. As the trial court stated, "if this was simply a case where the children were accusing the defendant and the defendant was denying that it happened, then it would be far more persuasive" an argument for the appointment of an expert to help determine whether D.'s and D.H.'s accounts were fabricated. Tr. p. 81. In sum, Booker failed to satisfy the requirements of *Beauchamp* for an expert witness to assure an adequate defense, as D.'s and D.H.'s reports of genital contact were corroborated by Booker himself. Thus, the trial court did not abuse its discretion when it denied Booker's request for funds regarding the appointment of a child psychologist to testify on his behalf.

### III. Inappropriate Sentence

■ Booker argues that the forty-year sentence is inappropriate in light of the nature of the offense and character of the offender. Specifically, Booker notes that he received the maximum sentence on each count even though he had no prior criminal history. Additionally, Booker notes that the offenses committed were not violent.

■ We first note that this court will not revise a sentence authorized by statute unless it is inappropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B). Under Appellate Rule 7(B), a court is to initially focus on the presumptive sentence that may be imposed following a conviction for a particular class of felony. *Rodriguez v. State*, 785 N.E.2d 1169, 1179 (Ind.Ct.App.2003). In determining whether a sentence is appropriate, we consider the factors listed as aggravators and mitigators under Indiana Code section 35–38–1–7.1, each of which is merely "an amplifi-

cation" of the considerations of the nature of the offense and character of the offender addressed by Appellate Rule 7(B). *Id.* at 1176–77.

In considering the character of the offender, we begin by noting that the presumptive sentence for a class B felony is ten years. Ind.Code § 35–50–2–5. The trial court found that Booker had no criminal history, a fact that it called "a significant mitigating factor." Appellant's App. p. 78. Thus, were our review to end here, we would determine that a sentence below the presumptive was appropriate inasmuch as the only factor impacting the character of the offender or nature of the offense was one that reflected well on Booker's person. However, we also note that Booker was in a position of trust inasmuch as he was hired by D. and D.H.'s mother to care for her daughters. Booker's abuse of this position of trust reflects poorly on his character. *Cloum v. State*, 779 N.E.2d 84, 87 (Ind.Ct.App.2002) (holding that violation of a relationship of trust was a valid aggravator). With respect to the nature of the offense, while Booker's crimes were not violent, we note that D. and D.H. were infected with gonorrhea, a disease capable of causing severe pain, skin lesions, peritonitis, pelvic inflammatory disease and sterility if untreated. National Institutes of Health, *Gonorrhea—female* at http://www.nlm.nih.gov/medlineplus/ency/article/000656.htm (last visited May 13, 2003).

Booker received an executed term of forty years when the trial court could have imposed a sixty-year sentence. It is evidence that the trial court took Booker's lack of criminal history into account by imposing this sentence instead of a sixty-year sentence. This is apparent from the trial court's remark that a sixty-year sentence would be too great for Booker because such a sentence was typically one reserved for murderers. Appellant's App. p. 79. Based on the character of the offender and nature and circumstances of the offense, we are satisfied that Booker's forty-year sentence is appropriate.

### CONCLUSION

In light of the issues discussed, we conclude that the trial court did not err as a matter of law in denying Booker's request for a severance of the charges. We also find that the trial court did not abuse its discretion in refusing Booker's request for the appointment of a child psychologist at public expense. Finally, we find that the trial court appropriately sentenced Booker.

Affirmed.

SULLIVAN and DARDEN, JJ., concur.