**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

May 03 2013, 8:22 am

*Kevin S. Smith*

**CLERK**

of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KEVIN WILD**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEVIN BRODLEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1209-CR-725 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant Hawkins, Judge
Cause No. 49G05-1204-FC-23909

**May 3, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SULLIVAN, Senior Judge**

Kevin Brodley appeals his convictions for Class C felony burglary, Class D felony theft, and Class A misdemeanor criminal mischief as well as his adjudication as a habitual offender. We affirm.

Jeffrey Moe owned commercial property at 1642 East New York Street in Indianapolis. Suites B and C shared an electric meter. Moe leased Suite C to Brodley's girlfriend Lisa Miller ("Lisa") for Miss Bebb's Pizza Parlor and Suite B to Rakeem Satterfield for Rakeem's Boutique. Arguments between Lisa and Satterfield about the electricity bill were "very bitter." Tr. p. 166.

Sometime before April 2012, Satterfield left to serve overseas in Afghanistan. In the meantime, his stepmother Toine Miller ("Toine") looked after Rakeem's Boutique. Toine could not open the store every day because of her own job, but she stopped by to check on it daily.

On the morning of April 10, 2012, Marcos Santiago and Dustin Wells were doing HVAC work on the building when they heard a loud thumping noise followed by a shattering of glass. They went outside and saw a red Pontiac Grand Prix parked in front of one of the suites. The glass of the suite's door was shattered, and there was broken glass on the sidewalk. After using their cell phones to take photos of the car, including the license plate, they walked around the back of the building and called 911. Wells's photo of the car was taken at 9:06 a.m. The 911 call began at 9:07 a.m. As they circled back to the front of the building, they saw the car pull away and head east on New York Street. Santiago did not see how many people were in the car. Wells saw the driver, who appeared to be male.

At 9:25 a.m., Officer Brian Mack of the Indianapolis Metropolitan Police Department spotted a red Pontiac Grand Prix with the same plate number reported by Santiago and Wells about a mile away at Michigan Street and Rural Street when it pulled out in front of him from a parking lot. The car left the lot "very erratically" and "almost got t-boned." Id. at 102. Officer Mack followed the car while waiting for a backup unit but pulled it over when it quickly turned onto East St. Clair Street.

Terald Blakey was in the driver's seat, and Brodley was in the front passenger seat. On the front passenger floorboard, police recovered a backpack containing crowbars, channel locks, tin snips, a hammer, a screwdriver, a flashlight, three pairs of gloves, and a knit cap with holes cut out for eyes. In the backseat, police recovered clothing, towels, purses, luggage bags, watches, a cutlery set, Satterfield's Army flag, and a fur coat, all of which Toine identified as stolen from Rakeem's Boutique. Chunks of shattered glass and a tire iron were also found in the backseat.

The Grand Prix was registered to Lisa. An identification card for Lisa was found in the car, as well as a bank statement and an invoice belonging to Brodley. Brodley's wallet contained a membership card to "Reel One" for "Kevin and Lisa Brodley." State's Ex. 56.

The State charged Brodley with Class C felony burglary, Class D felony theft, Class A misdemeanor criminal mischief, and being a habitual offender.[1] A jury returned guilty verdicts for burglary, theft, and criminal mischief as charged.

---

[1] Brodley was charged with other crimes, but they were ultimately dismissed. See Appellant's App. pp. 15, 100.

3

Brodley waived jury trial on the habitual offender allegation and was thus tried to the bench. The State presented evidence that Brodley was convicted in 2003 of Class C felony burglary and subsequently convicted in 2010 of Class C felony auto theft. The auto theft had been elevated from a Class D felony due to his prior conviction for auto theft in 1989. Brodley moved for judgment on the evidence, arguing that the crime for which he received the 2010 conviction was not committed after the 2003 conviction since the 2010 conviction relied on his 1989 conviction to elevate the offense from a Class D to a Class C felony. The trial court denied the motion and adjudicated him a habitual offender.

The trial court imposed an aggregate nineteen-year sentence: seven years for burglary enhanced by twelve years for the habitual offender finding, two years for theft, and one year for criminal mischief, all to run concurrently.

Brodley presents three issues in this appeal, which we consolidate and restate as:

I.      Whether the evidence is sufficient to sustain his burglary, theft, and criminal mischief convictions.

II.     Whether the habitual offender enhancement is proper.

 I. BURGLARY, THEFT, AND CRIMINAL MISCHIEF CONVICTIONS

Brodley first contends that the evidence is insufficient to sustain his burglary, theft, and criminal mischief convictions. In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses. Treadway v. State, 924 N.E.2d 621, 639 (Ind. 2010). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdicts. Id. We affirm the

4

convictions if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id.

Brodley points to Hampton v. State, 961 N.E.2d 480 (Ind. 2012), and argues that we may sustain his convictions only if the evidence of his guilt is so conclusive as to exclude every reasonable theory of innocence. See Appellant's Br. p. 10. Hampton involved an entirely different claim in an entirely different posture. There, a post-conviction petitioner challenged his appellate counsel's effectiveness for failing to argue that the trial court erred by rejecting an instruction informing the jury that evidence of guilt must be so conclusive as to exclude every reasonable theory of innocence where the evidence of guilt is only circumstantial. In addressing the petitioner's claim, the Supreme Court held that when a trial court determines that the actus reus is established exclusively by circumstantial evidence, the jury should be instructed that the proof must be so conclusive as to exclude every reasonable theory of innocence. Id. at 491.

How a jury should be instructed when evidence is only circumstantial, though, is quite different from our standard when reviewing a jury's verdict based solely on circumstantial evidence. See Craig v. State, 730 N.E.2d 1262, 1266 (Ind. 2000). Where there is only circumstantial evidence, that evidence need not overcome every reasonable hypothesis of innocence; instead, it is sufficient if a reasonable inference supporting the verdicts may be drawn from the evidence. Id.

Brodley's challenge is one of identification; he claims there is insufficient evidence that he was the person who committed the crimes. However, the record shows ample circumstantial evidence of his guilt. The State, while not required to show motive,

5

presented evidence that Brodley's girlfriend Lisa and Satterfield had "very bitter" arguments about their businesses' shared electricity bill. On April 10, 2012, Santiago and Wells heard a loud thumping noise followed by a shattering of glass. When they went outside to investigate, they saw Lisa's red Pontiac Grand Prix parked in front of Rakeem's Boutique, the glass in the store's door smashed, and broken glass scattered on the sidewalk. As Santiago and Wells called 911, they saw the car driving off. Officer Mack identified a red Pontiac Grand Prix with the same plate number reported by Santiago and Wells driving "very erratically" some fifteen minutes later when it pulled out in front of him. Upon stopping the car, Officer Mack found Brodley in the front passenger seat with a complete burglar kit at his feet. The backseat was piled high with items stolen from Rakeem's Boutique along with chunks of broken glass and a tire iron. This evidence is sufficient to sustain Brodley's convictions.

As to his criminal mischief conviction, Brodley also claims the evidence is insufficient because the smashed glass was owned by Moe and thus not property of Toine and/or Satterfield, as required by the charging information. The provision of the criminal mischief statute at issue here requires the State to prove beyond a reasonable doubt that Brodley recklessly, knowingly, or intentionally damaged or defaced "property of another person" without that person's consent. See Ind. Code § 35-43-1-2(a)(1) (2007). Contrary to Brodley's assertion, the language "property of another person" does not require the State to prove ownership but only a possessory interest. See Wallace v. State, 896 N.E.2d 1249, 1252 (Ind. Ct. App. 2008) (noting that burglary statute language "building or structure of another person" requires proof of rightful possession and not necessarily

6

ownership), trans. denied. The evidence shows that Satterfield leased Suite B from Moe, and that Toine looked after the property while Satterfield was away. This is sufficient to show that the property damaged was property of Toine and/or Satterfield. See id. at 1252-53 (evidence sufficient to show house was property of another as required by criminal mischief statute where person had rightful possession of house when defendant damaged it by ripping furnace and water heater from basement).

We therefore conclude the evidence is sufficient to sustain Brodley's burglary, theft, and criminal mischief convictions.

## II. HABITUAL OFFENDER ENHANCEMENT

Brodley next contends that the habitual offender enhancement is improper. Generally, the State may seek to have a defendant sentenced as a habitual offender for any felony by alleging that the defendant has accumulated two prior unrelated felony convictions. See Ind. Code § 35-50-2-8(a) (2005). To prove the allegation, the State must show that: "(1) the second prior unrelated felony conviction was committed after sentencing for the first prior unrelated felony conviction; and (2) the offense for which the state seeks to have the person sentenced as a habitual offender was committed after sentencing for the second prior unrelated felony conviction." Ind. Code § 35-50-2-8(c).

For the first prior unrelated felony conviction, the State presented evidence that Brodley committed Class C felony burglary in August 2002, was convicted of that offense, and was sentenced in June 2003. For the second prior unrelated felony conviction, the State presented evidence that Brodley committed Class C felony auto theft in July 2010, was convicted of that offense, and was sentenced in October 2010.

7

Brodley nonetheless argues that he did not commit the Class C felony auto theft after the June 2003 sentencing for Class C felony burglary since the auto theft's elevation from a Class D to a Class C felony relied on his earlier conviction for auto theft in 1989. We disagree. Merely because Brodley's 2010 Class C felony auto theft conviction relied on his 1989 auto theft conviction does not mean that the 2010 Class C felony auto theft offense did not occur after his June 2003 sentencing for Class C felony burglary. See Olatunji v. State, 788 N.E.2d 1268, 1273 (Ind. Ct. App. 2003) (1986 Class C felony conviction and 1987 Class D felony conviction, elevated from a Class A misdemeanor because of the 1986 conviction, properly used as predicate felonies supporting habitual offender enhancement of 1988 felony conviction), trans. denied.

Although Brodley's 2010 auto theft conviction relied on his 1989 auto theft conviction to elevate the 2010 offense from a Class D to a Class C felony, the 2010 auto theft offense was still committed in 2010. Brodley has failed to show that the habitual offender enhancement is improper.

We therefore affirm the trial court's judgment.

MAY, J., and MATHIAS, J., concur.