**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Dec 31 2013, 10:21 am
CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**WILLIE NORMAN**
Michigan City, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIE NORMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A04-1305-PC-270 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause Nos. 20C01-1103-PC-5 & 20C01-0803-FB-32

**December 31, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Willie Norman, pro se, appeals the post-conviction court's denial of his petition for post-conviction relief. He contends that the post-conviction court erred in holding that he did not receive ineffective assistance of trial counsel. Finding that Norman did not receive ineffective assistance of counsel, we affirm.

**Facts and Procedural History**

The facts underlying Norman's convictions were adopted from this Court's memorandum opinion on direct appeal:

> During November of 2007, Norman, his nephew, Chester Higgins ("Higgins"), and Demarlon Johnson ("Johnson") planned to rob a Chase Bank branch in Elkhart that Norman had patronized and "scoped out" for robbery. On November 7, Norman drove to the bank after instructing the younger men on how to dress and conduct themselves and what to expect inside the bank. Norman waited in an SUV that Higgins had stolen to serve as the get-a-way vehicle. Higgins and Johnson went inside, dressed in black and carrying handguns. They subdued the customers and employees, and took approximately $15,000. Norman then drove Higgins and Johnson back to change vehicles and split the money.
>
> On January 15, 2008, Norman met with another of his nephews, Cecil Hall ("Hall"), and Hall's friend Kalyn Butler ("Butler"), to plan a second robbery of the same Chase Bank branch. Norman instructed Hall and Butler as to how to commit the robbery, and told them to take weapons. On the following day, Norman drove Hall and Butler to the Chase Bank branch. Hall and Butler, armed, dressed in black and wearing masks, entered the bank. Butler pointed his gun at assistant branch manager Timothy Hayden and instructed Hayden to fill a bag with money. Butler hit Hayden in the head, causing Hayden to fall. Hall and Butler obtained approximately $12,000. Norman drove Hall and Butler back to another vehicle; they switched vehicles and then proceeded to a residence where the trio split the money.
>
> Investigations of the robberies led to the arrests of Higgins, Johnson, Hall and Butler, each of whom pled guilty to robbery and implicated Norman. Norman was charged with two counts of Conspiracy to Commit Robbery, two counts of Robbery, and one count of Receiving Stolen Property

> (the SUV). At the conclusion of a jury trial on February 11, 2009, Norman was found guilty as charged.
>
> Because of double jeopardy concerns, the trial court did not enter judgments of conviction on the conspiracy counts. On March 19, 2009, the trial court sentenced Norman to twenty years imprisonment for each of the Robbery counts, and three years imprisonment for the Receiving Stolen Property count, all consecutive.

*Norman v. State*, No. 20A05-0904-CR-208, slip. op. at 1 (Ind. Ct. App. 2009) (footnote omitted). On appeal, Norman argued that the trial court's failure to sever the charges and hold separate trials constituted fundamental error and that his aggregate forty-three-year sentence was inappropriate. *Id.* This Court affirmed, and the Supreme Court denied transfer.

In February 2011, Norman filed a petition for post-conviction relief alleging that his trial attorney was ineffective for failing to file a motion for severance of the charges and for failing to depose his codefendants. Appellant's App. p. 24, Appellant's Br. p. 6, 11. After several continuances, the post-conviction court held a hearing in February 2013. Tr. p. 1-13.

At the hearing, Norman's trial attorney, Jeffrey Majerek, testified. Majerek stated that he chose not to seek severance of the two incidents because Norman's nephews[1] were conspiring to implicate Norman because they were mad at him. *Id.* at 26. According to Majerek, if he had severed the matters, he "could not very well stand in front of the jury and say this was a conspiracy against him." *Id.* Having all four codefendants as a part of one trial was helpful to his defense. *Id.* at 69. In his meetings with Norman, he could not recall specifically if he discussed severance. *Id.* at 29.

---

[1] Norman's "nephews" were actually Norman's niece's sons. Tr. p. 45.

On cross-examination, Majerek stated that he acknowledged receipt of all discovery materials and that nothing introduced by the prosecution surprised him. *Id.* at 36. However, on redirect examination, Majerek did admit that he never questioned the codefendants during the discovery phase of the trial. *Id.* at 46. On recross examination, Majerek stated that he chose not to depose the codefendants because their testimony would not have been helpful and "surprise would have been one of my better efforts," to effectively question these codefendants at the trial. *Id.* at 47. Moreover, because codefendants are sometimes more likely to answer questions in a deposition, Majerek concluded that deposing the codefendants could produce testimony that may be more damaging to his client. *Id.* at 48.

Norman also testified that he did not remember if he discussed severing his charges into different trials with Majerek and did not know he would have a right to sever the charges into different trials. *Id.* at 49-50.

In its order, the trial court concluded that Norman failed to establish that he received ineffective assistance of counsel. Appellant's App. p. 58. "In sum, Petitioner has failed to prove that Majerek was ineffective, or that the results of his case would have been different if the counts had been severed." *Id.* at 61. For this reason, Norman did not prove that Majerek's performance fell below the objective standard of reasonableness or that Norman "suffered prejudice from Majerek's performance." *Id.*

Norman now appeals the post-conviction court's denial of his petition.

## Discussion and Decision

On appeal, Norman argues that he received ineffective assistance of counsel because Majerek failed to sever his cases and because he did not depose the codefendants in his case.

The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004).

"Appeals from a denial of post-conviction relief is equivalent to an appeal from a negative judgment." *Turner v. State*, 974 N.E.2d 575, 581 (Ind. Ct. App. 2012), *trans. denied*. This Court will only reverse if "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Id.* We will not reweigh the evidence or determine the credibility of witnesses from the post-conviction hearing. *Id.* at 582.

Norman first claims that he received ineffective assistance of trial counsel on direct appeal. The State argues that the issue is res judicata because Norman argued that the trial court erred in not requiring severance of his offenses. An issue that was "previously determined in a defendant's direct appeal is barred for post-conviction review on grounds of prior adjudication—res judicata." *Overstreet v. State*, 877 N.E.2d 144, 150 n.2 (Ind. 2007) (re-characterizing refusal to give jury instructions as ineffective assistance of counsel), *reh'g denied*. Indeed, "a petitioner for post-conviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define an alleged error." *Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006). Here, Norman

5

essentially couches the same issues litigated on direct appeal — whether the trial court's failure to sever the charges and hold separate trials constituted fundamental error — as an ineffective assistance of counsel claim.

Res judicata notwithstanding, Norman has not established that Majerek provided ineffective assistance of counsel during his trial. To prevail on a claim for ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to satisfy either prong will cause the claim to fail. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions with deference. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *reh'g denied*. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001).

When evaluating ineffective assistance of counsel claims, courts must be cognizant of the fact that there are countless ways to provide an effective defense in any given case. *Pennycuff v. State*, 745 N.E.2d 804, 812 (Ind. 2001). Even the best criminal defense

6

attorneys would not defend a particular client the same way. *Id.* (citing *Strickland*, 466 U.S. at 689). Accordingly, when appellate courts consider the claim of actual ineffectiveness of counsel, they "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* (citing *Strickland*, 466 U.S. at 690).

Two or more offenses may be joined in the same information when the offenses: (1) are of the same or similar character, even if not part of a single scheme or plan; or (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan. Ind. Code § 35-34-1-9(a). However, if two or more offenses have been joined for trial in the same information solely because they are of the same or similar character, the defendant shall have a right to sever the offenses. Ind. Code § 35-34-1-11(a). Under Section 35-34-1-9(a)(2), "if the State can establish that a common *modus operandi* linked the crimes and the same motive induced that criminal behavior," the offenses may be joined. *Craig v. State*, 730 N.E.2d 1262, 1265 (Ind. 2000). Modus operandi is "a pattern of criminal behavior so distinctive that separate crimes are recognizable as the handiwork for the same wrongdoer." *Id.* (citing *Penley v. State*, 506 N.E.2d 806, 810 (Ind. 1987)).

Here, the post-conviction court determined that the offenses were not joined solely because they were of the same or similar character. Instead, they were joined because a common modus operandi linked them together and the criminal motive was the same for both cases. Appellant's App. p. 61. For this reason, Norman did not have an automatic right to severance.

If severance is not a matter of right:

the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:

(1) the number of offenses charged;

(2) the complexity of the evidence to be offered; and

(3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

Ind. Code § 35-34-1-11(a). Because Norman did not have a right to severance, severance could only be effected if his trial attorney filed a motion pursuant to Section 35-34-1-11(a).

To prevail on an ineffective assistance of counsel claim, Norman must show that Majerek's decision not to file a motion to sever fell below an objective standard of reasonableness based on prevailing professional norms. At the post-conviction hearing, Majerek testified that he had strategic reasons for not seeking severance of Norman's offenses. His defense strategy was to prove that Norman's nephews were fabricating the story in order to gang up on him because "they were mad at them for not being the parent figure when they had none other. And so he felt that they were throwing him under the bus because they were trying to retaliate against them." Tr. p. 43-44. Majerek stated that he did not think this would be a successful defense if he chose to sever the offenses and referred to codefendants in separate proceedings. *Id.* at 45. Because the decision not to sever was strategic, we fail to see how Majerek's decision not to sever the offenses falls below the objective standard of reasonableness.

Norman also claims that he received ineffective assistance of counsel because Majerek did not depose the codefendants in the case. However, at the post-conviction

8

hearing, Majerek testified that choosing not to depose the codefendants was strategic.  He specifically chose not to depose them because their deposition testimony would be read into evidence if the codefendants bonded out and disappeared.  According to Majerek, "it's been my experience that if a deposition has been taken and a deposition is read by an intern or staff or somebody else to the jury, and it sounds awful black and white so to speak . . . I don't have a way to challenge . . . that person . . . ." *Id.* at 47.  Because Majerek did not want the codefendants' depositions preserved, he chose not to depose the codefendants during the discovery portion of the criminal proceedings.  *Id.*  Such a decision is afforded deference and does not fall below the objective standard of reasonableness.  *See Timberlake*, 753 N.E.2d at 603.

We find that the post-conviction court did not err in determining that Norman did not receive ineffective assistance of trial counsel.

Affirmed.

RILEY, J., and MAY, J., concur.