# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 30 2020, 10:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kelly Starling
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| A.W., <br> *Appellant-Respondent,* <br><br> *v.* <br><br> State of Indiana, <br> *Appellee-Petitioner.* | January 30, 2020 <br><br> Court of Appeals Case No. 19A-JV-1789 <br><br> Appeal from the Marion Superior Court <br><br> The Hon. Marilyn A. Moores, Judge <br> The Hon. Geoffrey A. Gaither, Magistrate <br><br> Trial Court Cause No. 49D09-1904-JD-467 |

**Bradford, Chief Judge.**

# Case Summary

[1]     In April of 2019, the then-sixteen-year-old A.W. led police on a car chase that ended in a four-vehicle accident.  A.W. was found to have committed what would be Level 6 felony resisting law enforcement and Class C misdemeanor operating a vehicle without ever receiving a license if committed by an adult.  The juvenile court ordered A.W. committed to the Indiana Department of Correction ("the DOC") for a recommended term of six months.  A.W. contends that the State produced insufficient evidence to establish that he committed resisting law enforcement and that the juvenile court abused its discretion in ordering him committed to the DOC.  Because we disagree with both contentions, we affirm.

# Facts and Procedural History

[2]     A.W. was born on November 25, 2002.  On April 27, 2019, Indianapolis Metropolitan Police Officer Jordan Huffman was dispatched to 34th Street and Moller Road to investigate a report of a stolen silver Toyota Camry with Alabama license plates.  While westbound on 34th Street, Officer Huffman passed an eastbound silver Camry bearing Alabama plates.  Officer Huffman u-turned, activated his lights and siren, and began pursuit.  As Officer Huffman pursued the Camry, it sped up, "barreled around […] the double solid yellow lines and blew through the red light at 34th and Moller."  Tr. Vol. II p. 83.  Once through the intersection, the Camry took a "sharp south right turn into Watergate causing a four vehicle crash."  Tr. Vol. II p. 83.  Officer Huffman

approached the Camry and determined that A.W., its lone occupant, was the driver and did not possess a valid driver's license.

[3] On April 29, 2019, the State alleged that A.W. committed what would be Level 6 felony auto theft, Level 6 felony resisting law enforcement, Class A misdemeanor possession of a controlled substance, Class B misdemeanor marijuana possession, and Class C misdemeanor operating a vehicle without ever receiving a license if committed by an adult. On June 25, 2019, the juvenile court adjudicated A.W. to be a juvenile delinquent by virtue of committing what would be Level 6 felony resisting law enforcement and Class C misdemeanor operating a vehicle without ever receiving a license if committed by an adult. On July 7, 2019, the juvenile court ordered A.W. committed to the DOC for a recommended term of six months.

# Discussion and Decision
## I. Sufficiency of the Evidence

[4] When reviewing claims of insufficient evidence in a juvenile case, appellate courts apply the same standard of review as if it were an appeal of a criminal conviction. *K.W. v. State*, 984 N.E.2d 610, 612 (Ind. 2013). In reviewing a challenge to the sufficiency of the evidence, we do not reweigh the evidence or assess the credibility of witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). "It is the fact-finder's role, not that of appellate courts to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We look only to evidence in a light most favorable to the juvenile court's ruling and

must affirm the conviction unless no reasonable fact-finder could find the elements proven beyond a reasonable doubt. *McHenry*, 820 N.E.2d at 126. The evidence need not overcome every reasonable hypothesis of innocence. *Craig v. State*, 730 N.E.2d 1262, 1266 (Ind. 2000).

[5] A.W. contends only that the State failed to establish that he committed Level 6 felony resisting law enforcement. "A person who knowingly or intentionally […] flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself and ordered the person to stop; commits resisting law enforcement," a Level 6 felony if "the person uses the vehicle to commit the offense[.]" Ind. Code § 35-44.1-3-1(a)(3), -(1)(c)(1)(A) (version effective from July 1, 2016, to July 1, 2019). "Flight has been defined as 'a knowing attempt to escape law enforcement when the defendant is aware that a law enforcement officer has ordered him to stop or remain in place once there.'" *D.W. v. State*, 903 N.E.2d 966, 968 (Ind. Ct. App. 2009) (quoting *Wellman v. State*, 703 N.E.2d 1061, 1063 (Ind. Ct. App. 1998)), *trans. denied*.

[6] Here, Officer Huffman, in a fully-marked police vehicle, was dispatched to investigate a report of a stolen silver Toyota Camry with Alabama plates. (Tr. V01. II 81, 82). While on the way, Officer Huffman found a vehicle matching that description, activated his emergency lights and siren, and began pursuit. A.W., instead of stopping, sped up, crossed the double yellow lines into the oncoming traffic lane, "barreled around" the vehicle in front of him, ran a red light, and took a sharp turn at high speed, causing an accident. This is more

than sufficient evidence to support a finding that A.W. was well aware of Officer Huffman's pursuit and engaged in a dangerous, high-speed car chase in an attempt to elude him. A.W. argues that the short duration of the incident and his reckless driving are evidence not of flight but, rather, of inexperience. This argument is nothing more than an invitation to reweigh the evidence, one that we decline. *See, e.g.*, *McHenry*, 820 N.E.2d at 126.

## II. DOC Commitment

[7] A.W. also contends that the juvenile court abused its discretion in ordering him committed to the DOC for six months. A juvenile court is accorded "wide latitude" and "great flexibility" in its dealings with juveniles. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). "[T]he choice of a specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will only be reversed if there has been an abuse of that discretion." *Id.* The juvenile court's discretion in determining a disposition is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least-harsh disposition. *Id.* An abuse of discretion occurs when the juvenile court's action is "clearly erroneous" and against the logic and effect of the facts and circumstances before it. *Id.*

[8] The goal of the juvenile process is rehabilitation rather than punishment. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). "Accordingly, juvenile courts have a variety of placement options for juveniles with delinquency problems, none of which are considered sentences." *Id.* Indiana Code section

31-37-18-6(1)(A) provides that "[i]f consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that is in the least restrictive (most family like) and most appropriate setting available." "[T]he statute contains language that reveals that a more restrictive placement might be appropriate under certain circumstances." *J.S.*, 881 N.E.2d at 29. The law requires only that the disposition selected be the least restrictive disposition that is "consistent with the safety of the community and the best interest of the child." *D.S. v. State*, 829 N.E.2d 1081, 1085 (Ind. Ct. App. 2005).

[9]　Given A.W.'s alarming history with the juvenile-justice system and the failure of less-restrictive placements to rehabilitate him, we cannot say that the juvenile court abused its discretion. A.W. has an extensive history of previous delinquency referrals, including referrals for truancy in January of 2015; battery resulting in bodily injury in July of 2017; battery resulting in bodily injury to a public safety officer, battery against a public safety officer, and disorderly conduct in September of 2017; auto theft and operating a vehicle without a license in November of 2017; possession of a controlled substance and violation of release conditions in May of 2018; resisting law enforcement and escape in June of 2018; robbery and violation of release conditions in February of 2019; and escape in February of 2019. A.W.'s referrals have resulted in adjudications for what would be two counts of Level 6 felony escape, Level 5 felony robbery, two counts of Level 5 felony battery resulting in injury to a public official, Level 6 felony receiving stolen auto parts, and Class A misdemeanor battery resulting

in bodily injury if committed by an adult and three counts of modification of probation technology/runaway.

[10]  Many placements less restrictive than the DOC have been tried, but none have caused A.W. to reform himself. A.W. was placed at Options Treatment Facility from July of 2018 until January of 2019. After that, A.W. was placed at Youth Outlook Group Home. While on a home pass from Youth Outlook Group Home in February of 2019, A.W. stole an elderly woman's purse from her lap as she was being pushed in a wheelchair and was charged with robbery. Following a true finding in that case, A.W. was placed on GPS monitoring, which he cut off before running away from Youth Outlook Group Home. At the time A.W. was arrested in this case, his whereabouts had been unknown to his mother and the court for approximately two months. These actions demonstrate that the less-restrictive placements have not been successful in rehabilitating A.W.

[11]  Moreover, multiple witnesses opined that A.W. was in need of a more-restrictive placement than had been tried in the past. Following A.W.'s most recent arrest, he participated in a physiological examination by Dr. Jim Dalton, Psy.D. After considering A.W.'s needs and the risks to the community, Dr. Dalton recommended commitment to the DOC. Dr. Dalton determined that A.W. needs "a very high level of supervision, structure, and direction if there is to be any improvement in his risk profile." Appellant's App. Vol. II p. 160. The probation department noted that A.W. "has received nine delinquency referrals in the last two years, his charges have continued to escalate, he has

been offered numerous community based services as well as two residential placements previously, yet, those services did not deter him from committing further delinquent acts." Tr. Vol. II p. 98.

[12] In adopting the recommendations for DOC commitment, the juvenile court noted that A.W. "has had the benefit of just about every service we have here." Tr. Vol. II p. 114. The juvenile court also stated that "he has been to placement on two different occasions at least and there have been a number of things we have ordered and yet here we are again." Tr. Vol. II p. 114. The juvenile court reasoned that the other placements and services that had been provided to A.W. had not been successful and the "only thing we haven't done, is been to the [DOC]." Tr. Vol. II p. 114. The juvenile court determined that the structure, security, and separation that the DOC offers would fit A.W.'s needs and that it is in his best interests to be removed from his home environment:

> [R]emaining in the home would be contrary to the welfare of the child because:
> - the child needs protection that cannot be provided in the home.
> - the child has special needs that require services for care and treatment that cannot be provided in the home.
> - the nature of the probable cause affidavit.
> - the child has received numerous services with this court.
> - Detention is essential to protect the Child.
> - Detention is essential to protect the community
> - The Respondent has been placed outside of the home at Youth Outlook and Options, for delinquent behaviors.

Appellant's App. Vol. II p. 13.

In summary, the juvenile court has offered A.W. less-restrictive placement options multiple times to no avail. The juvenile court must consider the "safety of the community and the best interest of the child" when making dispositional decisions. Ind. Code § 31-37-16-6. The ever-worsening nature of A.W.'s criminal activity, along with the failure of less-restrictive options, renders the DOC an appropriate placement that can offer services to rehabilitate A.W. while providing structure and supervision. We conclude that the juvenile court did not abuse its discretion when it ordered A.W. committed to the DOC for a recommended term of six months.

We affirm the judgment of the juvenile court.

Robb, J., and Altice, J., concur.