Quanardel WELLS, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S05–1202–CR–68.

Supreme Court of Indiana.

Feb. 21, 2013.

### PUBLISHED ORDER

By order dated February 2, 2012, the Court granted a petition seeking transfer of jurisdiction from the Court of Appeals. After further review, including consideration of the points presented by counsel in supplemental briefs and at oral argument, and discussion among the Justices in conference after the oral argument, the Court has determined that it should not assume jurisdiction over this appeal and that the Court of Appeals not-for-publication memorandum decision, *Wells v. State*, No. 49A05–1012–CR–731, 2011 WL 4402623 (Ind.Ct.App. Sept. 22, 2011), should be reinstated as a memorandum decision. *See* Appellate Rule 65(D). Accordingly, the order granting transfer is VACATED, and transfer is hereby DENIED. Pursuant to Appellate Rule 58(B), this appeal is at an end.

The Court directs the Clerk to certify this appeal as final and to send a copy of this Order for publication on-line and in the bound volumes of this Court's decisions.

DAVID, MASSA, and RUSH, JJ., concur.

RUCKER, J., dissents with separate opinion in which DICKSON, C.J., concurs.

RUCKER, Justice, dissenting from the denial of transfer.

Defendant seeks interlocutory review of the trial court's order denying his motion for severance of offenses pursuant to Indiana Code section 35–34–1–11. Passing on the opportunity to provide guidance and clarity on an area of the law in need of both, the majority declines to address the defendant's arguments. I would grant transfer and do so. Therefore I dissent from today's order denying the defendant's Petition to Transfer.

The essential facts are these. In August 2009 Quanardel Wells was charged in an eleven-count information with various offenses arising out of his alleged sexual assault against four different victims on four separate occasions. In pertinent part he was accused of the following:

(1) On June 10, 2009, driving what was described as a silver-colored two-door car with a sunroof, Wells approached L.H. who was walking along a street in Indianapolis, Indiana. Wells offered L.H. twenty dollars to perform fellatio to which she agreed and entered the car. Wells proceeded to drive away from the location. While L.H. performed fellatio Wells was smoking crack cocaine. After announcing that he intended to drive to one location and then another in order to buy more cocaine, L.H. stopped performing fellatio. Wells threatened to hurt L.H. if she did not continue and instructed L.H. to keep her eyes closed. L.H. attempted to escape from the car and a struggle ensued during which Wells placed his hands around L.H.'s neck. L.H. eventually managed to escape through the passenger window. Wells was charged with criminal deviate conduct, criminal confinement, and strangulation.

(2) On June 24, 2009, driving what was described as a small, black car with a sunroof, Wells spoke to M.M. as she was

walking along a street in Indianapolis, Indiana. M.M. could not hear what Wells was saying, so she walked to the passenger door. When M.M. leaned into the car, Wells grabbed her hair and pulled her inside. Holding M.M. by the hair, Wells told her if she did exactly as he instructed then she would not get hurt. Wells began driving and smoking a crack pipe. As he drove, he instructed M.M. to perform fellatio to which M.M. complied. At some point a struggle ensued during which Wells pushed M.M. out of the car. Wells was charged with criminal deviate conduct and criminal confinement.

(3) On July 4, 2009, driving what was described as a small, sporty, dark-colored car with a sunroof, Wells approached L.B. as she was walking along a street in Indianapolis, Indiana. Wells asked L.B. if she was "dating," to which she replied affirmatively. Appellant's App. at 130. L.B. then got into the car and agreed to go to the American Inn in Speedway, Indiana where Wells rented a room. Once the two entered the room, Wells produced a knife and told L.B. to get on the bed where he forced L.B. to engage in oral, anal, and vaginal sex. After checking out of the motel the next morning Wells drove L.B. near the area the two had met the night before. Wells was charged with rape and two counts of criminal deviate conduct.

(4) On July 8, 2009, driving what was described as a small, two-door, shiny, black sports car, Wells approached N.M. as she was walking along a street in Indianapolis, Indiana. N.M. entered the car for a "date" and Wells drove to an area behind the American Inn in Speedway, Indiana. At that point, Wells produced a knife and told N.M. that she was going to do what he wanted. Wells then pulled out a pipe and began smoking crack cocaine. While he was smoking, he ordered N.M. to perform fellatio and not to let his penis leave her mouth or he would kill her. N.M. managed to grab the knife, and throw it out the window. She eventually jumped from the car and escaped. Wells was charged with criminal deviate conduct, criminal confinement, and intimidation.

In July 2010, Wells filed a motion to sever the counts requesting separate trials for each alleged victim. After a hearing the trial court denied the motion. Wells sought interlocutory review which the Court of Appeals granted. In an unpublished memorandum decision the Court of Appeals affirmed the judgment of the trial court. *See Wells v. State*, No. 49A05–1012–CR–731, 2011 WL 4402623 (Ind.Ct. App. Sept. 22, 2011). Wells petitioned to transfer which after reconsideration this Court denies today.[1]

### Overview

The joinder of like offenses fulfills important policy objectives such as convenience and economy of judicial and prosecutorial resources. 5 Wayne R. LaFave, et al., Criminal Procedure § 17.1(b), at 8 (3d ed.2007). Moreover, a defendant may prefer joinder to the harassment, delay, trauma, and expense of multiple prosecutions. *Id.* (quotation omitted). But joinder of offenses carries with it significant risks, including that a jury may convict the de-

---

1. By Order dated February 2, 2012, the Court originally granted transfer in this case and specifically directed the parties to "file supplemental briefs with expanded argument on whether the appellant is entitled to separate trials for each of the charged sexual assaults." Order, No. 49S05–1202–CR–68, (Feb. 2, 2012). The Order continued, "[t]he Court is interested in severance in other states with statutes similar to Indiana's, under any model or uniform codes, in federal courts, and an expanded discussion of the jurisprudence of severance in Indiana state appellate decisions." *Id.* The parties complied accordingly and we held oral argument on March 22, 2012.

fendant "upon the weight of the accusations or ... the accumulated effect of the evidence." 2 American Bar Association Standards for Criminal Justice, Standard 13–2.1 cmt. at 13 ● 13 (2d ed. 1980) [hereinafter "Standards" or "ABA Standards"] (footnotes omitted). To address these competing concerns states as well as the federal government employ various joinder and severance rules.

For example the Federal Rules of Criminal Procedure permit joinder of offenses against a single defendant under three circumstances: (1) based upon the same act or transaction; (2) based upon two or more acts or transactions connected together or constituting parts of a common scheme or plan; or (3) based upon two or more acts or transactions of the same or similar character. *See* Fed.R.Crim.P. (8)a, 13. Under the federal scheme, even though offenses may have been properly joined, the court nonetheless may order separate trials if joinder would prejudice the defendant. Fed.R.Crim.P. 14(a). And prejudice can be found where: (1) the defendant may become embarrassed or confounded by presenting separate defenses; (2) the jury may use the evidence of one of the crimes to infer criminal disposition on the part of the defendant from which the defendant's guilt of the other crime or crimes charged may be found; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when if considered separately, it would not so find. LaFave, *supra* § 17.1(b), at 9. The federal courts have devised different tests to determine whether offenses are of the "same or similar character" and thus may be joined. For example, the First Circuit Court of Appeals examines factors such as "whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred." *United States v. Ed-*

*gar,* 82 F.3d 499, 503 (1st Cir.1996)(quotation omitted). But in the Second Circuit, crimes are "similar" if they are "somewhat alike" or share "a general likeness." *United States v. Werner,* 620 F.2d 922, 926 (2d Cir.1980)(quotation omitted).

The ABA Standards also provide guidance on joinder and severance. The Standards differ from the Federal Rules in that they categorize offenses as either "related" or "unrelated." "Related offenses" are those "based upon the same conduct, upon a single criminal episode, or upon a common plan." ABA Standard 13–1.2. "Unrelated offenses" are those that are not "related." ABA Standard 13–1.3. The Standards permit unlimited joinder of related and unrelated offenses, but "neither requires nor recommends the joint trial of offenses." ABA Standard 13–2.1 cmt. at 13 ● 12. Severance of related offenses is discretionary, *see* ABA Standard 13–3.1(b), but ABA Standard 13–3.1(a) grants the prosecution and the defense an absolute right to sever unrelated charges. Offenses that are of the "same or similar character" are considered unrelated offenses. ABA Standard 13–1.3 cmt. at 13 ● 11. The severance Standard explains that "[i]n most cases ... joint trials of unrelated offenses are difficult to justify because the defendant suffers all of the disadvantages of a joint trial while the prosecutor achieves few if any of the benefits of a joint trial...." ABA Standard 13–3.1(a) cmt. at 13 ● 30 (footnote omitted). Where offenses are unrelated, "the benefits to the government are substantially reduced and the benefits to the defendant are outweighed by substantial disadvantages." ABA Standard 13–2.1 cmt. at 13 ● 13 (footnote omitted).

A plurality of jurisdictions has adopted the language of the Federal Rules of Crim-

inal Procedure or language similar to it.[2] Fewer states have adopted the ABA related-unrelated approach[3] or endorse a broadly permissive approach.[4] Regardless of the approach followed, a fair number of states provide a right of severance when the offenses are unrelated and have been joined because they are of the same or similar character.[5] In the end the underlying thrust of these various approaches is an attempt to strike a balance between a defendant's right to a fair trial and the government's interest in securing swift and efficient justice.

## Discussion

In Indiana, two or more offenses may be joined in the same indictment or information when the offenses are either: "of the same or similar character, even if not part of a single scheme or plan," or "based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." Ind.Code § 35–34–1–9(a). "Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses." I.C. § 35–34–1–11(a). On the other hand, the trial court has discretionary authority to sever offenses "whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense...." *Id.* In such instances the trial court is required to consider "(1) the number of offenses charged; (2) the complexity of the evidence to be offered; and (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." *Id.*

Interpreting Indiana Code sections 35–34–1–9(a) and 35–34–1–11(a) this Court has declared that severance of offenses is a matter of right under subsection 11(a) only when the offenses are joined *solely* because they are of the same or similar character. *See Ben–Yisrayl v. State,* 690 N.E.2d 1141, 1145 (Ind.1997). However when the offenses are joined under subsection 9(a)(2)—that is, offenses based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan—"the court must grant a severance only if it determines that it is appropriate to promote a fair determination of the defendant's guilt or innocence, based on subsections 11(a)(1) through (3)." *Id.* (internal quotation omitted). Here, in denying Wells' motion to sever, the trial court rested its decision on

---

**2.** *See, e.g.,* Ala. R.Crim. P. 13.3(a); Ariz. R.Crim. P. 13.3(a); Ark. R.Crim. P. 21.1; Del.Super. Ct. R.Crim. P. 8(a); Haw. Penal P.R. 8(a); Kan. Stat. Ann. § 22–3202(1); Ky. R.Crim. P. 6.18; La.Code Crim. Proc. Ann. Art. 493; Me. R. Crim P. 8(a); Md. R.Crim. P. 4–203(a); Mo. S.Ct. R. 23.05; Mont.Code Ann. § 46–11–404(1); Neb.Rev.Stat. § 29–2002(1); N.J. R.Crim. P. 3:7–6; N.M. Dist. Ct. R.Crim. P. 5–203(A); N.D. R.Crim. P. 8(a); Or.Rev.Stat. § 132.560(*l*)(b); R.I. Sup.Ct. R.Crim. P. 8(a); S.D. Codified Laws § 23A–6–23; Vt. R.Crim. P. 8(a); Wash. Sup.Ct.Crim. R. 4.3(a); Wis. Stat. Ann. § 971.12(1); Wyo. R.Crim. 8(a).

**3.** *See, e.g.,* Mass. R.Crim. P. 9(a); N.H.Super. Ct. R. 97–A(I).

**4.** *See, e.g.,* Mich. R.Crim. P. 6.120(A); Minn. R.Crim. P. 17.03(1).

**5.** *See, e.g.,* Ariz. R.Crim. P. 13.4(b); Ark. R.Crim. P. 22.2(a); Mich. R.Crim. P. 6.120(C); Minn. R.Crim. P. 17.03 subd. 3(1)(a); Tenn. R.Crim. P. 14(b); Vt. R.Crim. P. 14(b)(1)(A). *See also, e.g.,* Tex. Penal Code Ann. § 3.04 (providing for severance by right of all joined offenses except in limited circumstances); *cf.* Ala. R.Crim. P. 13.4(a); Colo. R.Crim. P. 14; Pa. R.Crim. P. 583 (permitting a court to sever any counts when joint trial would result in prejudice to the defendant).

three grounds: "[t]he charged offenses are remarkably similar in character," App. at 110; "[t]he offenses are connected by a distinctive nature and/or a common modus operandi," and the offenses "appear to be a series of acts connected together." Appellant's App. at 111.

Seeking separate trials for each alleged victim, Wells contends he is entitled to severance as a matter of right because the offenses were joined together solely because they are of the same or similar character. According to Wells the offenses do not satisfy the test for "common plan or scheme." *See Penley v. State*, 506 N.E.2d 806, 809 (Ind.1987) ("The test to bring evidence of other offenses within the common plan or scheme exception is not whether the other offenses have certain elements in common with the charged crime, but whether the other offenses tend to establish a preconceived plan by which the charged crime was committed.") (quotation omitted). In like fashion, according to Wells, the charged offenses are not sufficiently connected together. *See Craig v. State*, 730 N.E.2d 1262, 1265 (Ind.2000) ("Offenses may be sufficiently 'connected together' to justify joinder under subsection 9(a)(2) if the State can establish that a common *modus operandi* linked the crimes and that the same motive induced that criminal behavior.") (quotation omitted).[6] Wells acknowledges that the separate offenses at issue share similarities, but insists they "are not so unique or distinctive that they must be the work of a single wrongdoer." Br. of Appellant at 15. The State counters that the offenses were not joined together *solely* because they are of the same or similar character. And thus Wells is not entitled to severance as a

matter of right. Relying essentially on the same case authority cited by Wells, the State argues the "acts were connected temporally and by a common modus operandi, shared a common motive, and were not joined solely on the ground that they were of the same or similar character." Br. of Appellee at 7.

The parties' respective positions highlight the challenges posed in resolving claims of severance as a matter of right. For the most part our traditional approach has been to look at the facts in a given case, compare them to another case, and then reach a conclusion based on the comparison. *See, e.g., Jester v. State*, 724 N.E.2d 235, 239–40 (Ind.2000) (comparing facts in similar case and concluding trial court properly denied motion to sever as of right charges of murder and conspiracy because "the charges arose out of several acts driven by a single motive"); *see also Philson v. State*, 899 N.E.2d 14, 17 (Ind. Ct.App.2008), *trans. denied* (reviewing the facts and concluding trial court properly denied motion to sever multiple counts of child molesting of one victim and two counts of rape of another victim because "these crimes are sufficiently linked together such that severance was not mandated"); *but see, e.g., Clark v. State*, 695 N.E.2d 999, 1003 (Ind.Ct.App.1998) (reviewing the facts and concluding counsel rendered deficient performance in not moving to sever as of right one count of child molesting of one victim and one count of rape of another victim because the counts were joined solely on grounds they were similar in character). And it is rarely the case that one cannot analyze a given set of facts and reach the conclusion that offenses are either a "series of acts con-

---

**6.** *Modus operandi* has been defined as "a pattern of criminal behavior so distinctive that separate crimes are recognizable as the handiwork of the same wrongdoer." *Penley,*

506 N.E.2d at 810 (quoting *People v. Barbour,* 106 Ill.App.3d 993, 62 Ill.Dec. 641, 436 N.E.2d 667, 672 (1982)).

nected together," "based on the same conduct," or based on conduct "constituting parts of a single scheme or plan." *See, e.g., Henson v. State,* 707 N.E.2d 792, 796 (Ind.1999); *Jameison v. State,* 268 Ind. 599, 377 N.E.2d 404, 406 (1978); *Ben–Yisrayl,* 690 N.E.2d at 1145, *Moore v. State,* 545 N.E.2d 828, 830 (Ind.1989); *Kahlenbeck v. State,* 719 N.E.2d 1213, 1215 (Ind.1999); *Abner v. State,* 479 N.E.2d 1254, 1261 (Ind.1985).

In essence our traditional approach in resolving claims of severance fails to provide meaningful guidance to either the bench or the bar, and thus lends itself to inconsistent results, even where the facts are very similar. Just as important, our interpretation of Indiana Code section 35–34–1–1 makes it virtually impossible for a defendant to obtain a severance as a matter of right. This could not have been what the Legislature intended.

I am of the view that those States which recognize the interplay between severance and joinder rules and those States' equivalent to Indiana Evidence Rule 404(b) offer a more useful model in determining whether a defendant is entitled to severance as a matter of right. The Rule provides in relevant part: "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Ind. Evid. R. 404(b).

The following cases are instructive. In *State v. Ives,* 187 Ariz. 102, 927 P.2d 762 (1996), the issue before the Arizona Supreme Court was whether the defendant, who had been convicted of multiple counts of child molesting, was entitled to severance as a matter of right. Similar to Indiana's joinder and severance statutes, Arizona procedural rules allow joinder of offenses "alleged to have been a part of a common scheme or plan" but grant to defendants the automatic right to sever "if offenses are joined only because they are of the same or similar character." *Id.* at 766 (quotations omitted). In addressing this issue the Court observed "analysis of [the procedural rules] is related in part to Rule 404(b) . . . ; if a defendant's motion to sever is denied and joinder was based only on the similarity between the offenses, defendant only has a remedy if the prior act evidence would not have been admissible under Rule 404(b)." *Id.*[7] Ultimately the Court determined the trial court erred in denying the defendant's motion to sever because "there [was] no basis for admitting the evidence under Rule 404(b)" *Id.* at 772; *cf. State v. LaBounty,* 168 Vt. 129, 716 A.2d 1, 6 (1998) (finding no error in denying severance of two counts of aggravated assault against two different victims because "[e]vidence relating to both offenses would have been admissible in separate trials to show a common scheme or plan under [Vermont Rule of Evidence] 404(b)"); *State v. Profit,* 591 N.W.2d 451, 461 (Minn.1999)(denial of motion to sever three counts of murder and two counts of criminal sexual assault was not "prejudicially erroneous" because other crimes evi-

**7.** Similar to the Indiana Rule, the Arizona Rule provides:

[e]xcept as provided in Rule 404(c) [character evidence in sexual misconduct cases] evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformi-

ty therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ariz. Evid. R. 404(b).

dence was admissible under Minnesota Evidence Rules 403 and 404(b)).

The State of Tennessee takes an approach similar to that of Arizona. In *State v. Denton*, 149 S.W.3d 1 (Tenn.2004), one of the issues before the Court was whether the defendant, who had been convicted of twenty sexual offenses involving eleven different victims, was entitled to severance of the offenses. As with Arizona, joinder and severance in Tennessee are also governed by procedural rules. The rules allow joinder of offenses "if the offenses constitute parts of a common scheme or plan or if they are of the same or similar character." *Id.* at 12 (internal quotation omitted). However, where "two or more offenses have been joined or consolidated for trial pursuant to [the rule], the defendant shall have a *right* to a severance of the offenses unless the offenses are part of a common scheme or plan *and* the evidence of one would be admissible upon the trial of the others." *Id.* at 12–13 (emphasis in original) (quotation omitted). Noting there is a "question of evidentiary admissibility that must be addressed," the Court explained that in order for joinder to survive, "the trial court must conclude that[ ] ... the offenses are part of a common scheme or plan; ... [that] evidence of each offense is relevant to some material issue in the trial of all the other offenses" under Rule 404(b)(2); and that "the probative value of the evidence of other offenses is not outweighed by the prejudicial effect that admission would have on the defendant" un-

der Rule 404(b)(4).[8] *Denton*, 149 S.W.3d at 13. Ultimately, on various grounds the Court vacated the defendant's convictions and remanded the case for separate trials. *Id.* at 17.

"[Indiana Evidence Rule 404(b) ] is designed to prevent the jury from making the 'forbidden inference' that prior wrongful conduct suggests present guilt." *Byers v. State*, 709 N.E.2d 1024, 1026–27 (Ind. 1999); *see also Thompson v. State*, 690 N.E.2d 224, 233 (Ind.1997)("The well established rationale behind ... Rule 404(b) is that the jury is precluded from making the 'forbidden inference' that the defendant had a criminal propensity and therefore engaged in the charged conduct.") (citation omitted); *Bassett v. State*, 795 N.E.2d 1050, 1053 (Ind.2003)(noting the purpose behind Rule 404(b) is to "prevent[ ] the State from punishing people for their character, and evidence of extrinsic offenses poses the danger that the jury will convict the defendant because ... he has a tendency to commit other crimes") (quotation omitted). A typical example of inadmissible evidence under 404(b) is a crime committed on another day in another place, and the only apparent purpose of the evidence is to prove that the defendant is a person who commits crimes. *Swanson v. State*, 666 N.E.2d 397, 398 (Ind. 1996). As we have observed:

> If a court were to indiscriminately admit proof of criminal activity beyond that specifically charged, then the burden on

---

8. The Tennessee Rules of Evidence provide:
   [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
   ...
   (2) The court must determine that a material issue exists other than conduct conform-

ing with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;
   ...
   (4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.
   Tenn. Evid. R. 404(b)

the defense would be intolerably enlarged and the court would effectively negate the due process presumption of innocence that our system of justice accords to every accused.

*Hardin v. State*, 611 N.E.2d 123, 128 (Ind. 1993) (citations omitted). But the same "forbidden inference" danger is also at stake when two or more offenses are joined for trial. That is, in a joint trial the jury hears all of the evidence concerning all of the offenses and could very well make the "forbidden inference" based on the weight of the accusations or the cumulative effect of the evidence.

To avoid this problem I would take guidance from our sister jurisdictions and factor Indiana Evidence Rule 404(b) into the equation of determining whether two or more offenses are joined solely because they are of the same or similar character. Thus, I would hold that if under Rule 404(b) relating to other crimes, the evidence of the crimes on trial would be inadmissible in a separate trial for the other, then the defendant is entitled to severance as of right under Indiana Code section 35–34–1–11(a).

Although evidence of other crimes is inadmissible to show the defendant's propensity to commit the charged act, "[i]t may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Evid. Rule 404(b). In assessing admissibility the trial court must (1) determine that the evidence of other crimes is relevant to a matter at issue, and (2) balance the probative value of the evidence against its prejudicial impact pursuant to Indiana Evidence Rule 403.[9] *Wilson v. State*, 765 N.E.2d

1265, 1270 (Ind.2002) (citations omitted). So, for example, if two or more crimes arose out of a continuing transaction or the same set of events then, depending on its prejudicial impact, the evidence may be independently admissible in separate trials. *See, e.g., Smoote v. State*, 708 N.E.2d 1, 3 (Ind.1999) (finding no error in refusing to sever separate charges of robbery and murder because the two offences were intricately related and evidence of the robbery charge would have been admissible during the murder trial to establish that defendant's motive was to ensure that the victim did not implicate defendant in the robbery). Similarly, where identity is at issue, if the facts surrounding two or more crimes are so strikingly similar and unique in such a way as to attribute the crime to a single person, and again depending on its prejudicial impact, the evidence of one may be admissible in the trial of the other to prove identity. *See, e.g., Penley v. State*, 506 N.E.2d at 809 (noting, in charges of rape and burglary, "[t]he State may prove identity by showing that the similarities between the two crimes are so strong and the method so clearly unique that it is highly probable that the perpetrator of both is the same person"). Under either example a defendant would not be entitled to severance as a matter of right.

Applying this jurisdiction's present case authority to such matters, the trial court denied Wells' motion to sever. However, as explained above our traditional approach is in need of reconsideration. Therefore, based on the foregoing discussion of the interplay between statutory severance and the Indiana Rules of Evidence I would grant transfer and remand this cause to the trial court for a hearing

---

9. Indiana Evidence Rule 403 provides: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

to determine (1) whether the offenses with respect to each alleged victim are of the same or similar character; (2) whether evidence of each of the offenses is relevant to some material issue at trial of all the other offenses under Indiana Evidence Rule 404(b); and (3) whether the evidence of the other offenses even though relevant should be excluded under Indiana Evidence Rule 403.[10]  If the hearing reveals that evidence of the offenses for which Wells is charged would be inadmissible in separate trials of the same offenses, then he would be entitled to severance as a matter of right under Indiana Code section 35–34–1–1.  Otherwise Wells would not be so entitled.

DICKSON, C.J., concurs.

---

**10.**  I note in passing such a hearing would be little different from that now anticipated by Rule 404(b) which dictates in part, "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice . . . of the general nature of [evidence of other crimes, wrongs, or acts] it intends to introduce at trial."  *See Hatcher v. State,* 735 N.E.2d 1155, 1159 (Ind.2000)(noting the trial court conducted a hearing on defendant's objections and arguments regarding the reasonableness of the State's notice and the admissibility evidence contained in the notice).