**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DANIEL LEE PIERCE,                    )
                                      )
    Appellant-Defendant,          )
                                      )
      vs.                     )     No. 78A05-1305-CR-211
                                      )
STATE OF INDIANA,                     )
                                      )
    Appellee-Plaintiff.           )

APPEAL FROM THE SWITZERLAND CIRCUIT COURT
The Honorable W. Gregory Coy, Judge
Cause No. 78C01-1201-FA-3

**January 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Daniel Lee Pierce appeals his convictions for one count of child molesting, as a Class A felony; four counts of child molesting, as Class C felonies; and two counts of child molesting, as Class D felonies, following a jury trial. Pierce presents three issues for our review, and the State presents an issue on cross-appeal. However, we need only consider the following two issues:

1. Whether the trial court erred when it denied his motion to sever the counts under Indiana Code Section 35-34-1-11.

2. Whether the trial court abused its discretion when it limited his cross-examination of one of the victims and when it admitted evidence regarding pornography.

We reverse and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

In December 1999, Pierce and his wife Lori moved to Vevay. Lori is paralyzed, uses a wheelchair, and requires in-home nursing care. Initially the couple lived in the Vevay Apartments, but later they moved to a single-story house on Seminary Street. The home has two bedrooms, both at the back of the house. Lori used one bedroom and Pierce slept in the other room, which they also called the computer room. The home had two computers, one of which was in Pierce's bedroom. Pierce and Lori have two adult children, a daughter, Amber, and a son, Bryan. Amber has a daughter, K.P., born in October 2003, and Amber's then-husband has two daughters, B.H., born in April 1998, and V.H., born in November 1999.

K.P., B.H., and V.H. occasionally spent the night at the Pierce home, sometimes without any other children present. In November 2011, seven-year-old K.P. was visiting

2

her three-year-old half-brother at his home when his grandmother found the two children naked in a closet. On December 28, personnel at the Child Abuse Center interviewed K.P. and V.H. regarding allegations against Pierce. Both children alleged that Pierce had molested them. Subsequently, Detective Kip Main of the Indiana State Police interviewed K.P. and V.H. and, later, B.H. Eventually, all three girls alleged that Pierce had molested them either at his home or in his truck, and K.P. said that Pierce had shown her "naked people" doing "nasty stuff" in movies. Transcript at 53-54.

In the meantime, Pierce was admitted to a mental health facility.[1] While there, he telephoned Lori and asked her to remove the computers from their home. Lori asked for assistance from Melody Reese, one of Lori's home healthcare providers and a neighbor of the Pierces. But instead of getting rid of the computers, Reese contacted Detective Main and arranged to deliver the computers to law enforcement. With the help of another neighbor and caretaker of Lori, Reese delivered the computers to the police later the same day. Subsequent forensic analysis of the computer from Pierce's bedroom showed an internet history that included pornographic web sites involving "an overwhelming theme of young girls in compromising positions and videos related to that nature of girls." Transcript at 242. Some of the pornography sites visited included "PappaF***Me.com," "FirstTimeWithDaddy.com," and "F***meDaddy.org." Id. at 245.

On January 5, 2012, Pierce was arrested, and Detective Main interviewed him at the Switzerland County Jail. During his interview, Pierce admitted to Detective Main that he had accessed pornography on his computer. The State charged Pierce with one

---

[1] The parties do not explain Pierce's admission to the facility, nor do they cite to the record to show the details of his admission or treatment.

count of child molesting, as a Class A felony ("Count I"); two counts of child molesting, as Class C felonies ("Counts II and III"); and two counts of child solicitation, as Class D felonies ("Counts IV and V"). V.H. and K.P. were the victims named in those counts. On January 31, 2012, the State added another count of child molesting, as a Class C felony ("Count VI"), regarding A.R., Pierce's niece. And on March 16, 2012, the State filed two additional counts of child molesting, as Class C felonies ("Counts VII and VIII"), regarding B.H.

On June 18, 2012, Pierce filed a motion to sever the counts. Following a hearing on June 19, the trial court denied that motion. On September 14, the State again filed two additional counts of child molesting, as Class A felonies ("Counts IX and X"), as to V.H. But on September 19, the State filed a motion to dismiss Count I with prejudice, which the trial court granted.

On October 30, Pierce filed a motion to dismiss Counts IX and X. The trial court denied the motion on January 18, 2013. Over Pierce's objection, the trial court set all remaining counts, Counts II through X, for trial. However, the trial date was continued. And on March 5, the State filed amended informations for Counts II, IV, and IX, changing the dates upon which the alleged offenses had occurred. The trial court allowed the amendments.

On March 8 and March 11, Pierce filed motions in limine. The trial court granted the motions in part, excluding evidence pertaining to a polygraph test taken by Pierce, Pierce's prior criminal conduct, and prior contacts with Ohio Child Services without first obtaining permission outside the presence of the jury. The court also granted the motions

4

in part as to alleged pornography and alleged child pornography, ordering that the State's witnesses could testify as to being shown child pornography, that the State could not show the images to the jury, and that the State's forensic examiner could testify only after an offer of proof. The trial court denied the motions as to a "Secret Treasures brand lingerie/nightgown" that one of Lori's caretakers saw one of the victims wearing when she exited Pierce's bedroom early one morning and text message pictures of naked men. Appellant's App. at 293. The trial court also granted the State's motion in limine in part, excluding evidence of B.H.'s past sexual conduct without first obtaining permission outside the presence of the jury.

The jury trial on Counts II through X commenced on March 12. Before trial, Pierce renewed his motion to sever the counts, but the trial court denied that motion. During trial, B.H. testified that she had lied during a forensic interview because she would get in trouble if she "was ever to say something like that again." Transcript at 82. Despite the trial court's order on the State's motion in limine, Pierce then sought to introduce evidence that B.H. had previously made false allegations to a reporting authority. The trial court denied Pierce's request to make an offer to prove to preserve the record. Also at trial, the court admitted over Pierce's objections the State's evidence showing the internet history on Pierce's computer.

At the close of the State's evidence, Pierce moved for a directed verdict. The State stipulated that the evidence did not support Count X, and the charge was dismissed. The trial court denied the motion as to Counts II through IX. Pierce then presented his case. At the close of all of the evidence, the trial court instructed the jury, in part giving

5

proposed instruction number 3 over Pierce's objection: "The State is not required to prove that the crime charged was committed during a particular time period alleged in the charging information." Appellant's App. at 309. And on March 15, the jury found Pierce not guilty of Count VI but guilty of Counts II, III, IV, V, VII, VIII, and IX.

At the sentencing hearing on April 12, the trial court identified several aggravators and mitigators and found that they balanced. The court then sentenced Pierce to a total of thirty-eight years, with eight years suspended, for an aggregate term of thirty years executed. With regard to the Class A felony, Pierce was sentenced to thirty years with six years suspended, to be served concurrent with the other two counts regarding the same victim and consecutive to the sentences imposed on the counts pertaining to each of the other victims. The trial court also found that Pierce was a sexually violent predator under Indiana Code Section 35-38-1-7.5(b)(1)(c) and a credit restricted felon under Indiana Code Section 35-31.5-2-72. Pierce now appeals.

## DISCUSSION AND DECISION[2]

### Issue One: Motion to Sever

Pierce contends that the trial court erred when it denied his motion to sever the counts under Indiana Code Section 35-34-1-11. Two or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when

---

[2] We initially note that Pierce has not supported any of his contentions in the argument section of his brief with citations to the record. Such citations are required by Indiana Appellate Rule 46(A)(8)(a). The failure to include such citations can result in waiver. At a minimum, it complicates both opposing counsel's review and our review of the issues and requires extra work in searching the facts section of the appellate brief for those citations. Although Pierce has supplemented many of his arguments with proper citations to the record in his Reply Brief, we remind counsel to comply with Rule 46(A)(8)(a) in the future, and we decline the State's request that we hold Pierce has waived his arguments on appeal for failing to comply with Rule 46(A)(8)(a).

6

the offenses: "(1) are of the same or similar character, even if not part of a single scheme or plan; or (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." Ind. Code § 35-34-1-9. "Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses." Ind. Code § 35-34-1-11(a); see also Brown v. State, 650 N.E.2d 304, 305-06 (Ind. 1995). Because the court has no discretion whether to sever charges that were joined solely on the ground that they were of the same or similar character, we review the trial court's decision denying Pierce's motion de novo.[3] See Jackson v. State, 938 N.E.2d 29, 36 (Ind. Ct. App. 2010), trans. denied.

In support of his contention that his charges should have been severed, Pierce relies on Justice Rucker's lengthy dissent from the denial of transfer in Wells v. State, 983 N.E.2d 132 (Ind. 2013). There, Justice Rucker, joined by Justice Dickson, explained that he would have granted a petition to transfer in that case in order to "provide guidance and clarity on an area of the law in need of both[,]" namely, application of the statutes pertaining to severance. Id. at 132 (Rucker, J., dissenting). Justice Rucker then opined that the "traditional approach in resolving claims of severance [as a matter of right] fails to provide meaningful guidance to either the bench or the bar and thus lends itself to inconsistent results, even where the facts are very similar." Id. at 137 (Rucker, J., dissenting). As a result, he set out the standard that he would have applied. We share

---

[3] The second part of Indiana Code Section 35-34-1-11 provides that the trial court has discretion whether to grant severance when charges are not joined solely on the ground that they are of the same or similar character. Pierce presents no argument under that part of the statute. Thus, we limit our review to whether his absolute right to a severance of the offenses was violated. Booker v. State, 790 N.E.2d 491, 494 (Ind. Ct. App. 2003) (citation omitted), trans. denied.

7

Justice Rucker's view that the law on claims of severance is confusing and that our traditional approach is in need of reconsideration. Id. at 139 (Rucker, J., dissenting). Nevertheless, we are bound by precedent from majority opinions. Thus, we apply the current standard, set out here, to determine whether the trial erred when it denied Pierce's motion to sever.

The essence of our inquiry is whether Pierce's charges were joined solely because they were of the same or similar character.[4] The State contends that additional factors support joinder of the charges, namely, "a common modus operandi, a distinctive nature, and the same motive." Appellee's Brief at 27. We cannot agree with the State.

To show that charges were not joined solely because they were the same or similar in character, the State may show that the charges contain a common modus operandi, thus establishing that the charges were joined because they were the work of the same person. As our Supreme Court has explained:

> The State (and, indeed, some of the authorities) have used "common design" and "modus operandi " interchangeably, but the concepts are quite distinguishable. A common design refers to a larger criminal scheme of which the crime charged is only a portion. Modus operandi means, literally, "method of working," and refers to a pattern of criminal behavior so distinctive that separate crimes are recognizable as the handiwork of the same wrongdoer. (Citations omitted). A common design is frequently relevant to show the motive for the crime charged. Modus operandi is most useful in showing that the accused is the perpetrator of the crime charged.

Penley v. State, 506 N.E.2d 806, 810 (emphasis added) (quoting People v. Barbour, 436 N.E.2d 667, 672 (Ill. App. Ct. 1982). For example, in Piercefield v. State, 877 N.E.2d 1213 (Ind. Ct. App. 2007), trans. denied, the defendant was charged with offenses

---

[4] Because the issue is whether Pierce was entitled to severance as a matter of law, we need not consider his conclusory argument that the joinder of the counts resulted in "the potential for unduely [sic] prejudicial effect and the likelihood of jury confusion[.]" Appellant's Brief at 14.

involving inappropriate touching of his stepchildren in the shower and in the bed. The evidence showed that he had begun showering with his stepdaughter beginning when she was eight years old under the premise that she could not wash her hair by herself, and he had showered with his stepson, stating that the child could not wash himself. Both children testified that they would often have to massage the defendant and that they had witnessed each other do such things. The trial court rejected the defendant's argument that the similarity of the molestations of his stepchildren could not constitute a unique modus operandi, holding that the facts created "a unique set of circumstances." Id. at 1218. We agreed with the trial court and, "[b]ecause of the distinct circumstances and similar modus operandi," held that the defendant was not entitled to the right of severance. Id.

Similarly, in Booker v. State, 790 N.E.2d 491 (Ind. Ct. App. 2003), trans. denied, we also held that the defendant was not entitled to severance of child molesting charges as of right. Specifically, we stated as follows:

> the State showed that both D. and D.H. were placed in Booker's care. The evidence showed that the molestation had occurred in the girls' bedroom while they were in bed. Moreover, both girls testified that Booker had used his hand to touch them. Finally, the only persons to test positive for gonorrhea were Booker and the two victims. [T]he State established that the charges were correctly joined because the episodes of molestation were the "handiwork of the same person" and not solely because they were of the same or similar character.

Id. at 495.

Here, Pierce's victims were pre-pubescent girls who were related to him as his granddaughter or step-granddaughters. Each girl had spent the night with him without

9

other grandchildren present, and all the victims had slept with him alone in his bedroom. In each case, he had abused his position of trust as a grandparent and caretaker.

But the similarities end there. K.P. alleged that Pierce had kissed her on the mouth; had touched her "front private" and "back private" with his hand, Transcript at 48; and had put his "front private" in her mouth, id. at 62, all of which occurred either at the Seminary Street house or in Pierce's truck. She also testified that Pierce had shown her pornography; that she had seen him touch his "private," id. at 63; that he had entered the bathroom to shower while she was on the toilet and told her not to leave; and that he had once joined her in the bathtub.

In contrast, B.H. testified that, on two different occasions, Pierce had approached her while she was watching television in Lori's bedroom on Seminary Street and that he had stroked her stomach and touched her "boobs." Id. at 72. V.H. testified that at both the Vevay Apartments and at the house on Seminary Street she had fallen asleep in Pierce's bedroom only to awaken and find him on top of her, touching her breasts and her vagina with his hands. She also saw him "play" with his penis until "white stuff" came out. Id. at 97.

The molestations described by each victim do not have more in common than the mere repetition of crimes of the same character, namely child molesting. Each victim described a different venue and different conduct than was perpetrated on the other two victims. At most, the State's evidence demonstrates that Pierce's molestations were crimes of opportunity, not signature crimes showing that the accused was the perpetrator. The evidence does not demonstrate "a pattern of criminal behavior so distinctive that

10

separate crimes are recognizable as the handiwork of the same wrongdoer." Penley, 506 N.E.2d at 810 (quotation omitted). Therefore, Pierce was entitled to severance of the counts under Indiana Code Section 35-34-1-11(a).[5] Because the trial court lacked the discretion to deny the motion for severance, we must reverse Pierce's convictions and remand for a new trial. See Pardo v. State, 585 N.E.2d 692, 695 (Ind. Ct. App. 1992). However, because certain evidentiary issues are likely to recur on remand, we briefly address them.[6]

### Issue Two: Admission of Evidence

Pierce argues that the trial court abused its discretion when it limited his cross-examination of one of the victims and refused his request to make an offer to prove. He also contends that the trial court should not have admitted evidence regarding pornography found on Pierce's computer. Our standard of review of a trial court's admission or exclusion of evidence is an abuse of discretion. Speybroeck v. State, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007). A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the trial court. Dawson v. State, 786 N.E.2d 742, 745 (Ind. Ct. App. 2003), trans. denied. In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. Id.

---

[5] In his appellate brief, Pierce also mentions Indiana Evidence Rule 404(b) with regard to this issue. However, because we resolve the issue under the severance statute, we need not address this argument.

[6] We cannot anticipate whether the sentencing issues raised by Pierce on appeal and the State on cross-appeal are likely to recur on remand and, thus, we will not address them.

Pierce first asserts that the trial court improperly limited his cross-examination of B.H. and denied his request to make an offer to prove. On this issue, Pierce argues, in relevant part:

> Pierce sought to introduce the fact that B.H. had made false accusations of sexual assault[] against other individuals in the past. The State specifically obtained a pretrial exclusion of this information in its Motion in Limine . . . . B.H., without goading by counsel, volunteered information about the prior allegations; "[I]f I was ever to say something like that again[], you're going to be in trouble." (Tr. 82). Pierce's counsel sought to make an offer of proof rather than violating the Motion in Limine by attempting to introduce the information on cross-examination. (Tr. 82). At side bar the parties discussed the proffered information and the State argued that "[W]e don't know what the prior allegation is." (Tr. 83). Thus, the issue was an offer of proof regarding the witness['s] past conduct in making false accusations to reporting authorities.

Reply Brief at 3 (some alterations original). The trial court denied Pierce's request to make an offer to prove.

While Pierce has not set out the standard for reviewing the trial court's denial of his request to make an offer to prove, we note that offers to prove are "important procedural tools benefitting not only the parties and the trial court, but especially the reviewing appellate court." Littler v. State, 871 N.E.2d 276, 278 n.2 (Ind. 2007). "While a trial court may exercise reasonable discretion in determining the timing and extent of such a motion, the court should very rarely completely deny a party's request to make an offer of proof, and then only upon clear abuse by the requesting party." Id. An offer to prove is required of counsel to preserve error in cross-examination. Arhelger v. State, 714 N.E.2d 659, 665-66 (Ind. Ct. App. 1999) (discussing development of rule requiring offer to prove on cross-examination). Because an offer to prove was required to allow

12

Pierce to preserve the issue on appeal, we hold that the trial court erred when it denied Pierce the opportunity to make that proffer.[7] See id.

Pierce also contends that the trial court abused its discretion when it admitted certain evidence of pornography over his objections, which were based on Indiana Evidence Rule 404(b). Evidence Rule 404(b) provides, in relevant part, that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

> In assessing the admissibility of 404(b) evidence the trial court must: (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403.

Haliburton v. State, ___ N.E.2d ___, 2013 WL 6698795, at *8 (Ind. Dec. 19, 2013) (alteration and quotation omitted).[8] "Simply stated, evidence is inadmissible under Indiana Evidence Rule 404(b) when its only apparent purpose is to prove that the defendant" is a person who acts in conformity with the character evidence presented. Wilson v. State, 931 N.E.2d 914, 919-20 (Ind. Ct. App. 2010) (emphasis added), trans. denied. However, where relevant, such character evidence "may be admissible for purposes other than to show the defendant's character . . . ." Id. at 920

---

[7] Because the trial court erred in refusing to allow Pierce to make an offer to prove, we need not address the issue of whether the trial court abused its discretion when it limited his cross-examination of B.H.

[8] Indiana Evidence Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

Here, Pierce argues that the trial court improperly allowed several witnesses to testify that they had observed pornography on his computer and improperly allowed the State to present the testimony of an investigating officer regarding the names and contents of websites that had been viewed on that computer. Pierce argues that the "only purpose of allowing this testimony was to enflame the emotions of the jury and attempt to prove Pierce's guilt by his character." Appellant's Brief at 16. We must agree in part.

As an initial matter, we reject the State's assertion that Rule 404(b) applies only to a defendant's prior illegal acts. See Appellee's Br. at 36. While it is true that past crimes are "the paradigm of evidence inadmissible under Rule 404(b)," Swanson v. State, 666 N.E.2d 397, 398 (Ind. 1996), the Rule plainly states that it applies to "a crime, wrong, or other act," Evid. R. 404(b) (emphasis added). Here, while the websites at issue were legal, in its closing argument to the jury the State emphasized that the descriptive nature of the domain names demonstrated there was "kiddie stuff" on Pierce's computer. Transcript at 304. The State used this evidence to demonstrate that Pierce had the character of a child molester and that he acted in conformity with that character vis-à-vis his victims.[9] Thus, this evidence was relevant only to show Pierce's propensity to

---

[9] The State suggests that Pierce failed to object to Detective Main's testimony of the domain names under Rule 404(b). Appellee's Br. at 35. We acknowledge that Pierce's objection at trial appears to have been based on the accuracy of the forensic examination of his computer rather than pursuant to Rule 404(b), see Transcript at 242, and we agree with the State that Pierce cannot rely on his Motion in Limine to preserve an issue for appellate review, see Simmons v. State, 760 N.E.2d 1154, 1158 (Ind. Ct. App. 2002). But during the testimony of the forensic examiner, Pierce did lodge a "404(b)" objection in addition to challenging the accuracy of the forensic examination. Id. at 204. And it is clear from the context of Pierce's objection to Detective Main's testimony that the parties and the court were aware of the objections to the forensic examiner's testimony. See id. at 242-43. We conclude that the Rule 404(b) question, as it pertains to the names of the websites, was fairly before the trial court for purposes of preserving the issue for appeal. See Showalter v. Town of Thorntown, 902 N.E.2d 338, 342 (Ind. Ct. App. 2009), trans. denied.

commit the charged acts, and the trial court abused its discretion to the extent it admitted the websites.

However, Pierce has not shown that the admission of testimony that witnesses had observed pornography in Pierce's room was erroneous. Indeed, that testimony supported K.P.'s testimony that Pierce had shown pornography to her. Likewise, the trial court properly allowed the forensic examiner's testimony that he had downloaded data from Pierce's computer and gave that information to Detective Main as well as Detective Main's testimony that the forensic examination of Pierce's computer had shown pornography sites in the internet search history. This evidence corroborated the victim's testimony. Thus, the evidence that there was pornography on Pierce's computer, without more, supported K.P.'s testimony that Pierce had exposed her to pornography and was not offered only to prove Pierce's propensity to commit the charged acts.[10] See Wilson, 931 N.E.2d at 919-20. Further, the probative value of this evidence was not substantially outweighed by a danger of unfair prejudice. See Haliburton, ___ N.E.2d at ___, 2013 WL 6698795, at *8. We affirm the trial court's admission of this evidence.

## Conclusion

The trial court erred when it denied Pierce's motion to sever the charges under Indiana Code Section 35-34-1-11. As a result, we reverse Pierce's convictions and remand for new trials. Because the evidentiary issues raised by Pierce on appeal are likely to recur on retrial, we also conclude that: the trial court did not abuse its discretion when it admitted testimony that witnesses had seen pornography in Pierce's room, that

---

[10] Because we are remanding on other issues, we need not consider Pierce's argument that the admission of evidence constitutes cumulative error.

15

Pierce had shown K.P. pornography, that the state police forensic examiner downloaded data from Pierce's computer, or that an examination of Pierce's computer showed pornography websites in the internet history. However, the trial court abused its discretion when it admitted Detective Main's testimony regarding the names of those websites, which was offered to show Pierce's propensity to commit the charged acts. Further, the trial court erred when it did not allow Pierce to make an offer to prove the testimony he sought to elicit from B.H. on cross-examination. Thus, we reverse Pierce's convictions and the sentences imposed and remand for new trials in accordance with this decision.

Reversed and remanded.

CRONE, J., concurs.

BAKER, J., concurring in part and dissenting in part with separate opinion.

16

# IN THE
# COURT OF APPEALS OF INDIANA

DANIEL LEE PIERCE,                )
                                    )
      Appellant-Defendant,       )
                                    )
           vs.               )     No.  78A05-1305-CR-211
                                    )
STATE OF INDIANA,           )
                                    )
      Appellee-Plaintiff.        )

**BAKER, Judge, concurring in part and dissenting in part.**

While I agree with the majority's disposition on most of the issues regarding the admission of evidence, I part ways with its determination that the trial court was required to sever the counts under Indiana Code section 35-34-1-11.  More particularly, I do not think that Pierce's counts were joined simply because they constituted the same or similar character; rather, I believe that the offenses were "based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan."  Ind. Code § 35-34-1-9.

In this case, despite the majority's observation that Pierce's offenses had few similarities, memo op. at 10, the testimony that K.P., B.H., and V.H. presented at trial provided insight into how the abuse perpetrated on each young child was connected and

17

part of a single plan that Pierce had devised to victimize these children, over whom he had control because he had relatively easy access.

K.P., the youngest child, testified that Pierce touched her "private" and "kissed [her] mouth" in a way that she did not like. Tr. p. 47-48. K.P. also stated that Pierce touched her "back private." Id. at 48. K.P. further detailed an incident during which she saw Pierce's "private" when he got into the bathtub with her. Id. at 52. Finally, K.P. described Pierce showing her "naked people" doing "bad stuff" on the computer." Id. at 53.

B.H., the middle child, testified that Pierce fondled her breasts. Tr. p. 72. B.H. stated that Pierce fondled her breasts a second time and in the same manner, waiting until no other children were around and approaching her in a bedroom. Id. at 75. Similar to K.P., B.H. testified that Pierce showed her a movie that had "really nasty stuff in it." Id. at 80.

V.H., the oldest child, testified that she awoke one night to Pierce "rubbing [her] breasts and [her] vagina area." Tr. p. 94. V.H. also testified that Pierce would force her to submit to oral sex. Id. at 95. V.H. stated that sometimes, Pierce would just fondle her breasts, while at other times, he would escalate the abuse to fondling her vagina and oral sex. Id. at 96.

Although Pierce did not commit exactly the same sexual acts on each child, his acts escalated with the age of the child. Under these circumstances, Pierce's offenses are part of a plan or scheme, and he is not entitled to have his counts severed. See I.C. § 35-34-1-11. Accordingly, I would not grant him a new trial.

Moving forward to the admission of evidence, I agree with the majority's disposition of every issue, except for the majority's determination that the trial court erred in permitting the admission of the domain names of the pornography websites. Indeed, similar to the majority's analysis of how K.P.'s testimony was supported by the testimony of witnesses who had observed pornography in Pierce's room, memo op. at 15, the names of the internet websites bolsters the victims' testimony. Put another way, the names of the websites were neither irrelevant nor mere propensity evidence in light of the children's testimony that, as stated above, indicates a plan or scheme. See Hicks v. State, 690 N.E.2d 215, 218 (Ind. 1997) (stating that evidence of other wrongs may be admissible to show "proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"). Consequently, I do not think the trial court erred by allowing the domain names into evidence and respectfully dissent on that issue as well.